# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 Case |
| MORTGAGE LENDERS NETWORK ) | |
| USA, INC. ) | |
| ) | Case No. 07-10146(PJW) |
| Debtor, ) | |
| ———————————————— ) | ——————————————— |
| ) | |
| GUISEPPE CACCAMO ) | |
| 277 Reservoir Avenue, Unit 901 ) | |
| Meriden, CT 06451, ) | |
| ) | |
| and ) | |
| ) | Adversary Case No. 07-51415 (PJW) |
| ROBIE-LYN HARNOIS ) | |
| 81 Castle Drive ) | |
| Meriden, CT 06451, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| MORTGAGE LENDERS NETWORK ) | |
| USA, INC., ) | |
| ) | |
| Defendant. ) | |

### FIRST AMENDED ADVERSARY CLASS ACTION COMPLAINT

Plaintiffs Giuseppe Caccamo and Robie-Lyn Harnois ("Plaintiffs") and all other persons similarly situated, as and for their complaint allege as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1331, 1334 and 1367.

749313.1

2. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

## NATURE OF THE ACTION

4. The Plaintiffs including all other persons similarly situated as members of the class they seek to represent, were employees of Debtor Mortgage Lenders Network USA, Inc., who were terminated without cause as part of, or as a result of, plant shutdowns and/or mass layoffs at MLN which took place concurrently with the shutdown of several of MLN's facilities nationwide. MLN violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act") by failing to give the Plaintiffs and other persons similarly situated, who are members of the Class the Plaintiffs seek to represent, at least 60 days prior notice of termination of their employment as required by the WARN Act. As a consequence, the Plaintiffs, and other members of the class they seek to represent, are entitled to recover from Defendant, under the WARN Act, their wages and other employee benefits for 60 working days following the termination of their employment, which wages and benefits have not been paid.

## PARTIES

5. The Debtor-Defendant, Mortgage Lenders Network USA, Inc. (hereinafter "MLN" or "Defendant") is, upon information and belief, a Delaware corporation that on or about February 5, 2007 (the "Petition Date") filed with the Court voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code").

6. The Plaintiffs, and other persons similarly situated as members of the proposed class they seek to represent, had been employed by MLN until their termination on various dates on or about January 2, 2007 or thereafter.

7. The Plaintiffs bring this action on their own behalf and, pursuant to the WARN Act, 29 U.S.C. § 2104(a)(5) and Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure and Bankruptcy Rule 7023, on behalf of all other persons similarly situated.

## CLASS ALLEGATIONS

8. The Plaintiffs, on behalf of themselves and the members of the Class, repeat and re-allege the allegations of the preceding paragraphs as though fully restated herein.

### A. DEFINITION OF THE CLASS

9. The Plaintiffs and the other similarly situated former employees constitute a class within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure and Bankruptcy Rule 7023.

10. The Class is defined as all of those individuals employed by MLN and who became "affected employees" because they suffered "employment losses" as a direct and proximate result of the plant closing and/or mass layoffs on or about January 2, 2007 or thereafter, and to whom MLN failed to provide notice in compliance with the WARN Act.

### B. NUMEROSITY

11. The Class is so numerous as to render joinder of all members impracticable as there are many hundreds of persons who are included in the Class. Upon information and belief, at least 1,200 individuals suffered termination of employment by MLN without proper notice. Other than Plaintiffs, the identities of all Class members are unknown but are ascertainable through appropriate discovery.

### C. EXISTENCE AND PREDOMINANCE OF COMMON ISSUES

12. Common questions of law and fact are applicable to all members of the Class.

13. The common questions of law and fact arise from and concern the following facts and actions, among others, that Defendant committed or failed to commit as to all members of the Class:

    a. all Class members enjoyed the protection of the WARN Act;

    b. all Class members were employees of Defendant;

    c. Defendant terminated the employment of all the members of the Class;

    d. Defendant terminated the employment of the members of the Class without giving them at least 60 days' prior written notice as required by the WARN Act; and

    e. Defendant failed to pay wages to the Class members and failed to provide other employee benefits for the 60 working day period following the respective terminations of their employment.

14. The questions of law and fact common to the members of the Class, as above noted, predominate over any questions affecting only individual members, and thus, this class action adversary proceeding is superior to other available methods for the fair and efficient adjudication of this controversy.

**D.     TYPICALITY**

15.     The Plaintiffs' claims are typical of the claims of other members of the Class. All such claims arise out of MLN's failure to provide notice under the WARN Act and its failure to timely disclose to employees that they would be laid off as a result of the plant closing and/or mass layoff. Plaintiffs and other Class members have suffered a common injury arising out of MLN's common course of conduct as alleged herein.

**E.     ADEQUATE REPRESENTATION**

16.     The Plaintiffs will fairly and adequately protect and represent the interests of the Class and has no interest antagonistic to or in conflict with those of other Class members.

17.     The Plaintiffs have the time and resources to prosecute this action and have retained qualified counsel who have had extensive experience in matters involving employee rights, the WARN Act, bankruptcy, and federal court litigation. The Plaintiffs intend to prosecute this action vigorously for the benefit of the class.

**F.     SUPERIORITY**

18.     A class action is superior to other available methods for a fair and efficient adjudication of this controversy because individual joinder of all members of the Class is impractical. Furthermore, damages suffered by members of the Class may be relatively small when compared to the expense and burden of individual litigation, which would make it difficult or impossible for individual members of the Class to obtain relief. The interests of judicial economy favor adjudicating the claims of the Class on a classwide basis rather than an individual basis.

G. **RISKS OF INCONSISTENT OR VARYING ADJUDICATION**

19. Class treatment is proper in this proceeding in order to avoid inconsistent or varying adjudications with respect to individual Class members. Separate actions by individual members of the Class would create a risk that adjudication of disputed issues of law or fact as to some of the former employees would be binding upon other Class members not party to the adjudication, or would otherwise substantially impair or impede their ability to protect their interests.

20. Pursuant to Fed. R. Civ. P. 23(a) and Bankruptcy Court Rule 7023, the Class meets all the requirements for class certification.

21. Class certification is also authorized by the WARN Act, 29 U.S.C. § 2104 (a)(5).

## FIRST CLAIM

### (Claim of the Named Plaintiffs)

22. The Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

23. At all relevant times, Defendant had more than 100 full-time employees within the United States.

24. At all relevant times, Defendant employed more than 100 employees who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

25. At all times relevant, Defendant was an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a).

26. On or about January 2, 2007 and thereafter, Defendant effected one or more "plant closings" or "mass layoffs," as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3).

27. The complete shutdown of the offices as "facilities or operating units" constitutes a "plant closing" within the meaning of 29 U.S.C. § 2101(a)(2), making all persons "affected employees" (including but not limited to such employees who were "bumped") as a direct and proximate result to notice under the WARN Act.

28. Alternatively, layoffs resulted in an employment loss of: more than 1/3 of MLN's employees, at pertinent "single sites of employment," and as such constituted a "mass layoffs" within the meaning of 29 U.S.C. § 2101(a)(3) in that at least 33% of the total employees (excluding any part-time employees) and at least 50 employees (again including any part-time employees) experienced an "employment loss" at single sites of employment; or at least 500 employees (company-wide).

29. The named Plaintiffs were employees of MLN in Middletown, Connecticut.

30. The named Plaintiffs were discharged on or about January 2, 2007 without cause on their part as part of a plant closing and/or mass layoff.

31. The plant closings and/or mass layoffs resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(6), at one or more single sites of employment. MLN failed to give written notice of the plant closing or/or mass layoff to the "affected employees" as required by the WARN Act, 29 U.S.C. § 2102, prior to the actual date of the closings and/or layoffs.

32. The WARN Act required that Defendant give each of the named Plaintiffs at least 60 days prior written notice of the termination of their employment.

33. Prior to the termination of their employment, the named Plaintiffs did not receive written notice from Defendant that complied with the requirements of the WARN Act.

34. Defendant failed to pay the named Plaintiffs their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following the respective terminations of their employment.

35. Defendant also failed to make pension and 401(k) contributions as required, and failed to provide health insurance coverage and other employee benefits under ERISA to the named Plaintiffs for 60 calendar days from and after the dates of the respective terminations of their employment.

36. Section 503(b)(1)(A)(ii) of the Bankruptcy Code defines the following as an administrative expense: "the actual, necessary costs and expenses of preserving the estate, including . . . wages and benefits awarded pursuant to a judicial proceeding . . . as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such conduct is based or whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title." 11 U.S.C. § 503(b)(1)(A)(ii).

37. Defendant's failure to provide Plaintiffs with at least sixty (60) days prior written notice of the termination of their employment was a violation of federal law, the WARN Act. The WARN Act specifically provides employers that violate the WARN Act are liable for "back pay" for each day of violation." 11 U.S.C. § 2104(a)(i)(A).

38. Because of Defendant's failure under the WARN Act, Plaintiffs are entitled to payment from the estate as an administrative expense for their respective wages, salary,

commissions, bonuses, accrued holiday pay and accrued vacation for "the period for the violation, up to a maximum of sixty (60) days" (11 U.S.C. § 2104(a)(1)) from the Petition Date, up to and including the date that is 60 calendar days after the violation as determined by the Court.

39.     Upon on information and belief, payment of wages and benefits will not substantially increase the probability of lay off or termination of current employees or of non-payment of domestic support obligations during the pendency of the bankruptcy.

40.     Plaintiffs, therefore, are entitled to an administrative expense claim under Section 503(b)(1)(A)(ii) of the Bankruptcy Code in an amount to be determined at a hearing on this matter. This award will include (but it not limited to) the value of the employees' unpaid wages and benefits, salary, commissions, bonuses, accrued holiday and vacation pay, pension and 401(K) contributions and the value of health insurance coverage and other employee benefits, which the Debtor had failed to provide for sixty (60) days following the termination of the employment of these employees.

41.     Alternatively, pursuant to 11 U.S.C. § 507(a)(4) and (5), the named Plaintiffs are entitled to a priority unsecured claim against MLN as to the first $10,000 of their WARN Act claims, or any higher priority amount as may be allowed. The balance of the named Plaintiffs' WARN Act claims are entitled to treatment as a general unsecured claim.

42.     As a result of Defendant's violation of the WARN Act, the named Plaintiffs have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension contributions and 401(K) contributions for 60 working days; (b) the health and medical insurance and other fringe benefits under the Employee Retirement Income Security Act ("ERISA") that they would have

received or had the benefit of receiving, for a period of 60 working days after the date of their termination; and (c) the medical expenses incurred during such period by them that would have been covered and paid under MLN's employee benefit plans had that coverage continued for that period.

WHEREFORE, the named Plaintiffs demand judgment as set forth below.

## SECOND CLAIM

### (Claim of Other Similarly Situated Employees)

43. The Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

44. At or about the time that the named Plaintiffs were discharged or shortly thereafter, Defendant also discharged hundreds of other employees who are not the named Plaintiffs ("Other Similarly Situated Former Employees") and who worked for Defendant.

45. Pursuant to 29 U.S.C. § 2104(a)(5), the named Plaintiffs assert the claims raised in this proceeding on behalf of each of the Other Similarly Situated Former Employees and for them or their benefit.

46. Each of the Other Similarly Situated Former Employees is similarly situated to the named Plaintiffs in respect to their rights under the WARN Act.

47. At all relevant times, Defendant employed more than 100 employees who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

48. At all times relevant, Defendant was an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a).

49. In or about January 2, 2007 and thereafter, Defendant effected one or more "plant closing" or "mass layoff," as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3).

50. The complete shutdown of the offices as "facilities or operating units" constitutes a "plant closing" within the meaning of 29 U.S.C. § 2101(a)(2), making all persons "affected employees" (including but not limited to such employees who were "bumped") as a direct and proximate result of the failure to give notice as required under the WARN Act.

51. Alternatively, the layoffs by Defendant resulted in an employment loss of more than 1/3 of MLN's employees, at pertinent "single sites of employment," and as such constituted a "mass layoff" (or layoffs) within the meaning of 29 U.S.C. § 2101(a)(3) in that at least 33% of the total employees (excluding any part-time employees) and at least 50 employees (again including any part-time employees) experienced an "employment loss" at single sites of employment; or at least 500 employees (company-wide).

52. Defendant discharged each of the Other Similarly Situated Former Employees on or after January 2, 2007 without cause on his or her part as part of a plant closing and/or mass layoff.

53. The plant closings and/or mass layoffs resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(6), at one or more single sites of employment. MLN failed to give written notice of the plant closings or/or mass layoffs to the "affected employees" as required by the WARN Act, 29 U.S.C. § 2102, prior to the actual date of the closings and/or mass layoffs.

54. Defendant is required by the WARN Act to give each of the Other Similarly Situated Former Employees at least 60 days prior written notice of the termination of their employment.

-11-

55. Prior to the termination of their employment, the Other Similarly Situated Former Employees did not receive written notice from Defendant that complied with the requirements of the WARN Act.

56. Defendant failed to pay the Other Similarly Situated Former Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following the respective terminations of their employment.

57. Defendant also failed to make the pension and 401(k) contributions and to provide health insurance coverage and other employee benefits under ERISA to the Other Similarly Situated Former Employees for 60 days from and after the dates of the respective terminations of their employment.

58. Section 503(b)(1)(A)(ii) of the Bankruptcy Code defines the following as an administrative expense: "the actual, necessary costs and expenses of preserving the estate, including . . . wages and benefits awarded pursuant to a judicial proceeding . . . as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such conduct is based or whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title." 11 U.S.C. § 503(b)(1)(A)(ii).

59. Defendant's failure to provide Plaintiffs with at least sixty (60) days prior written notice of the termination of their employment was a violation of federal law, the WARN Act.

The WARN Act specifically provides employers that violate the WARN Act are liable for "back pay" for each day of violation." 11 U.S.C. § 2104(a)(i)(A).

60. Because of Defendant's failure under the WARN Act, Plaintiffs are entitled to payment from the estate as an administrative expense for their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for "the period for the violation, up to a maximum of sixty (60) days" (11 U.S.C. § 2104(a)(1)) from the Petition Date, up to and including the date that is 60 calendar days after the violation as determined by the Court.

61. Upon information and belief, payment of wages and benefits will not substantially increase the probability of lay off or termination of current employees or of non-payment of domestic support obligations during the pendency of the bankruptcy.

62. Plaintiffs, therefore, are entitled to an administrative expense claim under Section 503(b)(1)(A)(ii) of the Bankruptcy Code in an amount to be determined at a hearing on this matter. This award will include (but it not limited to) the value of the employees' unpaid wages and benefits, salary, commissions, bonuses, accrued holiday and vacation pay, pension and 401(K) contributions and the value of health insurance coverage and other employee benefits, which the Debtor has failed to provide for sixty (60) days following the termination of the employment of these employees.

63. Alternatively, pursuant to 11 U.S.C. § 507(a)(4) and (5), each Other Similarly Situated Former Employees is entitled to a priority unsecured claim against MLN as to the first $10,000 of his or her WARN Act claim. The balance of each Class member's WARN Act claim is entitled to treatment as a general unsecured claim, or any higher priority amount as may be allowed.

-13-

64. As a result of Defendant's violation of the WARN Act, the Other Similarly Situated Former Employees, have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension contributions and 401 (k) contributions for 60 working days; (b) the health and medical insurance and other fringe benefits under the Employee Retirement Income Security Act ("ERISA") that they would have received or had the benefit of receiving, for a period of 60 working days after the dates of the respective terminations of their employment; and (c) the medical expenses incurred during such period by such persons that would have been covered and paid under MLN's employee benefit plans had that coverage continued for that period.

### THIRD CLAIM

**(Claim for Allowance and Payment of Administrative Expense Claims on Behalf of Other Similarly Situated Employees Terminated After the Petition Date)**

65. The Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

66. A certain portion of the Class are employees of the Debtors in the above-captioned case whose employment was terminated after February 5, 2007 (the "Post-petition Terminated Employees") without being given sixty (60) days advance written notice. These terminations were in violation of the WARN Act.

67. Section 503(b)(1)(a) of the Bankruptcy Code provides that the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case, shall be allowed as an administrative expense in a case. 11 U.S.C. § 503(b)(1)(a).

68. Because the employees provided MLN with labor and services during the post-petition period, each of them is entitled to an administrative expense claim including, but not limited to, sixty (60) days of pay and benefits as provided by the WARN Act, pursuant to § 503(b)(1)(a) and § 507(a)(1) of the Bankruptcy Code.

69. The claims of the Post-petition Terminated Employees under the WARN Act arose and accrued in their entirety after the Petition Date, because a WARN Act claim is a right to compensation based on lack of notice, without regard to length of service.

70. The Post-petition Terminated Employees are entitled to the sixty (60) day payment of an administrative expense claim under § 503(b)(1)(a) of the Bankruptcy Code in an amount to be determined at a hearing on this matter. This amount will include (but is not limited to) the value of the employees' unpaid wages and benefits, salary, commissions, bonuses, accrued holiday and vacation pay, pension and 401(k) contributions and the value of health insurance coverage and other employee benefits which the Debtors failed to provide for sixty (60) days following the respective post-petition termination of the employment of these employees.

WHEREFORE, the Plaintiffs and the Other Similarly Situated Former Employees, as the members of the Class they seek to represent, demand judgment, against Defendant as follows:

A. An Order from Court allowing and directing payment of an administrative expense claim under 11 U.S.C. § 503(b)(1)(A)(ii) on behalf of each affected person, in an amount including, but not limited to, the value of fair and paid wages and benefits, salary, commissions, bonuses, accrued holiday and vacation pay, pension and 401(k) contributions and the value of health insurance coverage and other employee benefits, which the Debtors failed to

provide for sixty (60) days following the termination of the employment of these employees after the Petition Date;

B.   A money judgment in favor of the Plaintiffs and each Other Similarly Situated Former Employee, equal to the sum of: (a) unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay and pension and 401(k) contributions for 60 working days; (b) the benefit of health and medical insurance and other fringe benefits under ERISA for 60 working days; and (c) any medical or other expenses incurred during the 60 working days since the respective terminations of their employment that would have been covered and paid under MLN's employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 28 U.S.C. § 2104 (a)(1)(A);

C.   Allowing Plaintiffs and each Other Similarly Situated Former Employee (i) as to all employees terminated prior to the Petition Date, a priority unsecured claim as to the first $10,000 or any higher priority amount as may be allowed, in respect of such sum and a general unsecured claim in respect of the balance of such sum; and (ii) as to all employees terminated after the Petition Date, the full amount of their WARN Act claim as an allowed administrative expense under section 503(b)(1)(A) of the Bankruptcy Code;

D.   Certification that the Plaintiffs' and the Other Similarly Situated Former Employees constitute a single class;

E.   Interest as allowed by law on the amounts owed under the preceding paragraphs;

F.   An allowance for the Plaintiffs and the Other Similarly Situated Former Employees' as an administrative priority claims pursuant to 11 U.S.C. § 507(b), reasonable attorneys' fees and the costs and disbursements incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. 2104 (a) (6); and

749313.1

G.  Such other and further relief as this Court may deem just and proper.

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP

Dated: September 10, 2007

*/s/ Richard M. Beck*
Richard M. Beck, Esquire (ID#3370)
Christopher A. Ward (ID#3877)
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189

and

Charles A. Ercole, Esquire
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP
260 S. Broad Street
Philadelphia, PA 19102-5003
(215) 568-6060

*Counsel for the
WARN Act Claimants*

Stuart Miller, Esquire
Lankenau & Miller, LLP
132 Nassau Street, Suite 423
New York, NY 10038
(212) 581-5005

THE GARDNER FIRM, P.C.
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
J. Cecil Gardner (GARDJ3461)
1119 Government Street
Post Office Drawer 3103
Mobile, AL 36652
Telephone: (251) 433-8100
Facsimile: (251) 433-8181

*Co-Lead Counsel for the
WARN Act Claimants*

749313.1

## CERTIFICATE OF SERVICE

I, Richard M. Beck, Esquire of Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, hereby certify that on this 10th day of September, 2007, I caused to be served a copy of the First Amended Adversary Class Action Complaint upon the parties listed below via hand delivery.

        Laura Davis Jones, Esquire
        Pachulski, Stang Ziehl & Jones
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE  19899-8705 (Courier 19801)

        /s/ Richard M. Beck
        Richard M. Beck

750644.1