**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| MORTGAGE LENDERS NETWORK USA, | ) | |
| INC. | ) | Case No. 07-10146 (PJW) |
| | ) | |
| Debtor. | ) | **Objection Deadline: April 19, 2007** |
| | ) | **Hearing Date: April 24, 2007 at 2:00 p.m.** |

**MOTION OF CONNECTICUT DEVELOPMENT AUTHORITY FOR**
**RELIEF FROM THE AUTOMATIC STAY**

The Connecticut Development Authority ("CDA") moves pursuant to section 362 of the Bankruptcy Code for relief from the automatic stay to apply funds in a controlled account to satisfy its secured claim against the Debtor under a Sales and Use Tax Relief Program Implementing Agreement. In support of this motion, CDA respectfully states as follows:

**Factual Background**

1. On February 5, 2007 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues in possession of its respective property as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. A committee of unsecured creditors has been appointed in the case. The Debtor has stated that is has sought Bankruptcy Court protection to maximize the value of its estate for the benefit of its creditors and other parties in interest by conducting an orderly wind-down of its business.

2. CDA is a body politic and corporate constituting a public instrumentality and political subdivision of the State of Connecticut.

3. The factual background regarding the Debtor, including its historical business operations and the state of its operations as of the commencement of this case, is

set forth in the Declaration of Daniel Scouler, Chief Restructuring Officer of the Debtor, in Support of First Day Motions (Docket No. 19; the "Scouler Declaration"). As recited in the Scouler declaration, as of the commencement of the case, the Debtor had essentially ceased operations at its prime and sub-prime wholesale origination offices and its regional loan origination offices. The Debtor had also scaled back its servicing operations and was attempting to market its servicing platform and rights.

4. In early 2006, the Debtor announced plans to relocate its corporate headquarters from Middletown, Connecticut to larger headquarters in Wallingford, Connecticut. In March 2006, the Debtor entered into a 20 year Lease Agreement for a new 300,000 square foot corporate headquarters building in Wallingford, Connecticut to be constructed for its use (the "Project").

5. On or about the petition date, the Debtor filed its Motion for Order under Sections 365(a) and 554(a) of the Bankruptcy Code Authorizing the Debtor to (1) Reject Certain Unexpired Leases of Nonresidential Real Property, and (2) Abandon any Personal Property Located at Such Premises (Docket No. 11; the "Rejection Motion"). The Rejection Motion recited that the scheduled leases were unnecessary to the continued operation of the Debtor's business, had no value to the estate, and should be rejected. The schedule of leases to be rejected included the lease for its proposed future corporate headquarters in Wallingford, Connecticut. The Rejection Motion was granted by an Order of the court dated February 28, 2007 (Docket No. 173).

6. In connection with the Project, and in order to reduce costs in connection with the construction and furnishing of the Project, the Debtor entered into a Sales and Use Tax Relief Program Implementing Agreement with CDA dated as of August 4, 2006 (the

"Implementing Agreement"). Pursuant to the Implementing Agreement, the Debtor and its contractor were permitted to (i) purchase certain tangible personal property and services exempt from any sales tax to the State of Connecticut and (ii) store, use or otherwise consume property and services exempt from any use tax to the State of Connecticut. Copies of the Implementing Agreement and related documents are attached to the Declaration of Karin A. Lawrence filed herewith.

7. The projected tax savings to the contractor, which would have been passed through to the Debtor under the lease for the Project, were estimated to be $1,600,000. However, in the event the Debtor relocated outside of the State of Connecticut or ceased to use the Project during the ten year period after first receiving benefits under the Implementing Agreement (defined in the Implementing Agreement as an "Early Disposition/Abandonment"), the Debtor would be liable to repay the total benefits received under the tax relief program with CDA plus seven and one-half percent (7.5%) of the actual sales and use tax savings accrued prior to the Early Disposition/Abandonment. The failure to make an Early Disposition/Abandonment Payment is an Event of Default under the Implementing Agreement.

8. To secure the Debtor's obligations under the Implementing Agreement, including but not limited to the contingent obligation to make an Early Disposition/Abandonment Payment, the Debtor and CDA entered into a Security Agreement dated August 4, 2006. Pursuant to the Security Agreement, the Debtor deposited $1,720,000 in an interest-bearing account at Bank of America (the "Account") under CDA's exclusive dominion and control and granted a security interest in the Account to CDA. The Security Agreement provides that after an Event of Default, CDA is entitled

to apply the funds in the Account to its reasonable costs and expenses, including attorneys' fees and to payment of the obligations of the Debtor to make the Early Disposition/Abandonment Payment.

9. CDA's security interest in the Account has been continuously perfected by CDA's control over the Account, the exclusive means of perfection with respect to deposit accounts under § 9-312(b)(1) of the Uniform Commercial Code. CDA also filed a UCC-1 financing statement with the Delaware Secretary of State under the Uniform Commercial Code.

10. As of the date of this Motion, the balance in the Account is approximately $1,743,000, consisting of the original deposit of $1,720,000 plus interest accrued from January 1, 2007 through February 2007. Additional interest will accrue on the Account after March 1, 2007.

11. Since the Project was not completed before the Debtor filed its Chapter 11 petition and sought to reject the lease for the Project, only a portion of the potential tax savings had been realized. The total sales and use tax benefits used by the Debtor and its contractor were $251,067.25.

12. With the abandonment of the Project resulting from the rejection of the lease for the Project, an Early Disposition/Abandonment Payment of $269,897.29 is now due to CDA.

**Relief Requested**

13. CDA seeks relief from the automatic stay to authorize CDA to instruct Bank of America to distribute to CDA $269,897.29 plus CDA's reasonable attorney's fees from the Account to be applied in satisfaction of Debtor's Early Disposition/Abandonment

Payment obligations under the Implementing Agreement. This payment will leave a balance of approximately $1,473,000 in the Account. The remaining balance secures certain indemnification obligations of the Debtor under Section 3.8 of the Implementing Agreement, but will otherwise be available to the Debtor and its creditors.

**Grounds for Relief**

14. Section 362(d) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
> (A) the debtor does not have any equity in such property; and
>
> (B) such property is not necessary to an effective reorganization. . . .

15. Relief is appropriate under both of these subsections.

16. The Debtor's only equity in the Account is in the value in the Account in excess of CDA's claim. The Debtor has no equity in the portion of the Account equal to the amount of CDA's claims.

17. The lack of any rights by the Debtor to any distributions from the Account until CDA's claims under the Implementing Agreement and the Security Agreement are satisfied also constitutes "cause" for relief from the automatic stay. As described above, the Account is maintained at Bank of America under CDA's exclusive control to provide

security for CDA's claims, and Debtor has no right to receive any distributions from the Account to the extent of CDA's claims.

**Statement of Amount Due**

18. The total sales and use tax benefits used by the Debtor and its contractor were $251,067.25.

19. An Early Disposition/Abandonment Payment of $269,897.29 is now due to CDA, without interest. In addition, the Debtor is responsible for CDA's legal expenses incurred as provided in section 8 of the Security Agreement.

**No Previous Request**

20. No previous request for the relief sought in this Motion has been made to this or any other Court.

**Notice**

21. No trustee or examiner has been appointed in connection with these Chapter 11 cases. CDA has provided notice of this Motion to (i) counsel for the Debtor, (ii) the Office of the United States Trustee, (iii) counsel for the Official Committee of Unsecured Creditors, and (iv) all parties who have filed a request for notice pursuant to Bankruptcy Rule 2002 in these chapter 11 cases.

WHEREFORE, CDA requests that the Court grant relief from the automatic stay in order to authorize CDA to withdraw $269,897.29 plus CDA's reasonable attorneys' fees from the Bank of America Account in satisfaction of the Debtor's obligations to make an Early

Disposition /Abandonment Payment under the Implementing Agreement and otherwise to exercise its rights as a secured creditor under the Security Agreement and under applicable law with respect to the Account.

Dated: March 27, 2007

STEVENS & LEE, P.C.

*/s/Joseph H. Huston, Jr.*
Joseph H. Huston, Jr. (No. 4035)
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
(302) 425-3310 (Tel.)
(610) 371-7972 (Fax)

*Co-Counsel for Connecticut Development Authority*

*Of Counsel*:
Daniel J. Carragher
DAY PITNEY LLP
One International Place
Boston MA 02110
(617) 345 4638 (Tel.)
(617) 345 4745 (Fax)