**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | : | **CHAPTER 11** |
| **MORTGAGE LENDERS NETWORK** | : | |
| **USA, INC.** | : | **CASE NO.: 07-10146(PJW)** |
| Debtor | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENJOIN THE STATE OF CONNECTICUT FROM COMMENCING CRIMINAL PROSECUTION PURSUANT TO 11 U.S.C. § 105**

This memorandum of law is submitted in support of the Motion of Mitchell Heffernan, director and former chief executive officer and president of Mortgage Lenders Network USA, Inc. ("Debtor") to Enjoin the State of Connecticut from commencing criminal prosecution against Mitchell Heffernan.

**I.     BACKGROUND**

On February 5, 2007, Mortgage Lenders Network USA, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 et seq.

During the approximate 45 day period prior to the filing of the bankruptcy petition, the Debtor's largest secured creditor Residential Funding Company, LLC ("RFC") took over the cash management of the Debtor. RFC retained a restructuring consultant, Navigant Capital Advisors, LLC ("Navigant"), to assist RFC in the management of the Debtor's operations, cash management and the bankruptcy reorganization process. RFC required the Debtor to retain a restructuring consultant, Scouler Andrews, to also assist the Debtor in the management of the Debtor's operations, cash management and the bankruptcy reorganization process. All financial transactions

and payments to creditors of the Debtor were required to be approved by RFC and Navigant.

From the takeover by RFC in mid December 2006, Mitchell Heffernan had no control over payments to any of Debtor's creditors, including, but not limited to, payment of employee commissions.  In addition, Mitchell Heffernan was directed by: (a) Debtor's bankruptcy counsel, James Stang, Esquire, (b) Tom Kelly, vice president of RFC, (c) Ed Cassas, managing partner of Navigant, and (d) Daniel Scoular, principal at Scoular Andrews, not to pay any commissions to employees because (1) the commissions were disputed and (2) the Bankruptcy Court would require the commission payments to be repaid to the Debtor as preferential payments.

Even though Mitchell Heffernan had absolutely no control over payment of any creditors or employee commissions since mid December 2006, the Connecticut State Attorney has threatened to arrest Mitchell Heffernan for failure to pay wages pursuant to Connecticut General Statute § 31-71(b) and (g).

## II.    ARGUMENT.

11 U.S.C. § 105(a) provides that "the Court may issue an order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

Bankruptcy Courts throughout this country have enjoined criminal prosecution, pursuant to the Bankruptcy Court's equitable powers of 11 U.S.C. § 105(a) when the criminal process is being used as a means of extracting a preference not accorded other creditors similarly situated.  See, e.g., In re Jerzak, 47 B.R. 771 (W.D. Wis. 1985), In re Bicro Corporation, 105 B.R. 255 (M.D. Pa. 1988), In re Dettler Farms, 58 B.R. 404 (D. S.Dak. 1986) and In re Caldwell, 5 B.R. 740 (W.D. Va. 1980).

In In re <u>Bicro Corporation</u>, <u>supra</u>, a corporate debtor sought an injunction prohibiting the criminal prosecution of the debtor, its officers, and/or employees on a criminal complaint.  The court concluded that "a creditor…may be permanently enjoined from any further participation in a criminal prosecution of a debtor when a creditor is seeking to utilize the criminal process as a means of exacting a preference not accorded to other creditors similarly situated."  <u>Id</u>. at 257.

In <u>In re Jerzak</u>, <u>supra</u>, the Bankruptcy Court for the Western District of Wisconsin enjoined the Wisconsin Department of Industry, Labor and Human Relations ("DILHR") from proceeding with civil and criminal actions against Chapter 11 debtors for unpaid wages due an employee. The civil claim was commenced prior to the filing of the bankruptcy case.  Subsequent to the filing of the bankruptcy case the County District Attorney commenced a criminal complaint for the unpaid wages.  The Bankruptcy Court held that: "The conclusion is inescapable that the … criminal proceeding is, but for the caption, a civil action to collect a debt." <u>Id</u>., 47 B.R. at 774.

Connecticut General Statutes §§ 31-71(b),(g) and 31-72 provide both civil and criminal remedies for the same act- failure to pay wages.  This is identical to the <u>Jerzak</u> case. The instant threatened criminal action against Mitchell Heffernan is a civil action dressed in "criminal" clothes- a civil action to collect wages.

The Bankruptcy Court in the Western District of Pennsylvania addressed the same issue in In Re <u>Shenango Group, Inc.</u>, 186 B.R. 623 (W.D. Pa. 1995).  The Bankruptcy Court dismissed a lawsuit filed personally against the Chief Executive Officer and Chairman of the Board of Directors of the Debtor corporation under the Pennsylvania Wage Payment and Collection Law.  The claim against the Chief Executive Officer and

Chairman of the Board of Directors was for unpaid fringe benefits that the Debtor had not

paid.   In dismissing the claim, the Bankruptcy Court held that the Bankruptcy Code

preempts the Pennsylvania Wage Payment and Collection Law, stating:

> "Once a bankruptcy petition is filed, the debtor in a Chapter 11 is
> barred from paying prepetition claims by any method other than
> plan payments or order of court.  Furthermore, the debts that arose
> prior to filing are discharged upon confirmation of the plan.  11
> U.S.C. §1141(d). The amounts to be received pursuant to the plan
> are new obligations between the claimants and the debtor.  Upon
> confirmation of the plan, the claimants are bound by its provisions.
> 11 U.S.C. §1141(a)."

> "If the WPCL is construed to mandate full payment by the
> [individual officers] of Plaintiffs' claims, they would be forced to
> pay monies that a debtor is not permitted to pay prior to the
> confirmation of its plan.  Upon confirmation, a debtor's obligation
> is only the amount provided for in the plan.   To require the
> [individual officers] to assume responsibility for amounts that [the
> Debtor] is not obligated to pay is, in effect, requiring them to make
> a contribution to the corporation on the basis of the position they
> held as officers of the debtor-in-possession."

> \*      \*      \*      \*

> "Interpreting the WPCL as Plaintiffs have suggested creates an
> unwarranted obstacle to attaining the objectives sought by the
> bankruptcy code….It would undermine the distribution scheme set
> forth in the bankruptcy code as it would require the debtor-in-
> possession's officers to make payments that the bankruptcy code
> prevents the debtor from making.  It would create two payments
> for these claimants; one from the estate, the other from officers of
> the estate." Id. at 627-628.

Mitchell Heffernan respectfully submits that the threatened criminal prosecution

is nothing more than an unlawful attempt by the State of Connecticut to circumvent the

distribution scheme set forth in the bankruptcy code by seeking payments from Mr.

Heffernan personally.   This is exactly what Bankruptcy Courts have prevented by

implementing the equitable powers of 11 U.S.C§ 105(a) to enjoin criminal prosecution

against officers and directors of debtor corporations.  Since the takeover of the Debtor by RFC in mid December 2006, Mr. Heffernan control of the Debtor's funds was in the hands of RFC and Navigant.

The threatened action by the Connecticut State Attorney on behalf of the Commissioner of the Connecticut Department of Labor is identical to the actions of the Wisconsin DILHR in the Jerzak case and the Pennsylvania WPCL in the Shenango Group, Inc. case.  The Connecticut State Attorney has threatened a criminal action to collect a civil debt, which is governed by the Bankruptcy Code.  If the State of Connecticut is allowed to arrest an individual who has done nothing illegal and through his corporation has sought bankruptcy protection, no corporate officer would be safe from all states attempting to circumvent the Bankruptcy Court.  This would make bankruptcy a nullity.  Therefore, the Connecticut State Attorney must be enjoined from proceeding with the threatened criminal action against Mr. Heffernan.

## III.  CONCLUSION.

Based on the foregoing it is respectfully submitted that the State of Connecticut

be enjoined from commencing criminal prosecution against Mitchell Heffernan.

Respectfully submitted,

BY: _____/S/_____

ROBERT SCANDONE, ESQUIRE
1800 John F. Kennedy Blvd, Suite 200
Philadelphia, PA 19103
(215) 563-6571
ATTY I.D. No. 15181
and
POZZUOLO & PERKISS, P.C.

BY: _____/S/_____

GARY M. PERKISS, ESQUIRE
2033 Walnut Street
Philadelphia, PA 19103
(215) 977-8200
ATTY I.D. No. 30324
Attorneys for Mitchell Heffernan