Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**Q.**     **No Interim Cash Payments of $50 or Less on Account of Allowed Claims.**

If an interim distribution to be received by the Holder of an Allowed Claim would be $50 or less, notwithstanding any contrary provision in the Plan, at the discretion of the Disbursing Agent, no such interim payment will be made to such Holder, and such Cash shall be held for such Holder until the earlier of (i) the next time an interim distribution is made to the Holders of Allowed Claims (unless the distribution would be less than $50 in which case Section 5(Q) of the Plan shall again apply), or (ii) subject to Section 5(W) of the Plan, the date on which final distributions are made to the Holders of Allowed Claims.

**R.**     **Disputed Payments.**

In the event of any dispute between and among Creditors as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Disbursing Agent may, in lieu of making such payment or distribution to such entity, instead hold such payment or distribution until the disposition thereof shall be determined by the Bankruptcy Court.

**S.**     **Unclaimed Property.**

Any entity which fails to claim any Cash within 60 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan. Upon forfeiture, such Cash (including interest thereon) shall be deposited into the Claims Reserve Account to be distributed to the Holders of Allowed Claims in the manner described in Section 5(N)(vii) of the Plan for distribution of excess amounts. Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor, the Liquidating Debtor, or the Disbursing Agent or any Holder of an Allowed Claim to whom distributions are made by the Disbursing Agent.

**T.**     **Setoffs.**

Nothing contained in the Plan shall constitute a waiver or release by the Debtor and/or Liquidating Debtor of any right of setoff or recoupment the Debtor and/or Liquidating Debtor may have against any Creditor or Interest Holder.

**U.**     **No Distributions on Late-Filed Claims.**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first filed after the applicable Bar Date shall be a Disallowed Claim, and the Liquidating Debtor shall not make any distribution to a Holder of such a Claim; provided, however, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Liquidating Debtor shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

35

**V.**    **Withholding Taxes.**

Pursuant to section 346(f) of the Bankruptcy Code, the Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. The Debtor shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such Withholding Taxes.

**W.**    **De Minimis Distributions; Charitable Donation.**

Notwithstanding anything to the contrary therein, the Disbursing Agent shall not be required to make a distribution to any Creditor if the dollar amount of the distribution is so small that the cost of making that distribution exceeds the dollar amount of such distribution. At the Final Distribution Date, the Responsible Officer may make a charitable donation with undistributed funds if, in the reasonable judgment of the Responsible Officer, the cost of calculating and making the final distribution of the remaining funds is excessive in relation to the benefits to the Creditors who would otherwise be entitled to such distributions.

**X.**    **Issuance of New Common Stock.**

On or as soon as practicable after the Effective Date the New Common Stock shall be issued by the Liquidating Debtor to the Responsible Officer to be held on behalf of and as the representative of all Holders of Allowed Claims. Each Holder of an Allowed Claim shall be deemed to hold an undivided beneficial Pro Rata interest in the New Common Stock based upon the priority and Allowed amount of such Holder's Claim. The New Common Stock shall be treated as a Plan Asset and any proceeds of the New Common Stock shall be distributed as Plan Proceeds to the Holders of Allowed Claims in accordance with the distributive provisions of the Plan.

**Y.**    **United States Trustee Fees.**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date. Thereafter, the Liquidating Debtor shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the case.

**IX.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**    **Rejection of Executory Contracts and Unexpired Leases**

Except with respect to executory contracts or unexpired leases that were (i) previously assumed or rejected by order of the Bankruptcy Court, and (ii) are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed

36

rejected pursuant to Section 365 of the Bankruptcy Code. Nothing in this Article 6 shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases.

**B.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not Filed within such times will be forever barred from assertion against Debtor, the Liquidating Debtor, or the Estate and its property. All such Claims for which proofs of claim are timely and properly Filed and ultimately Allowed will be treated as Unsecured Claims subject to the provisions of Article 3 hereof.

## X.

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND TO THE EFFECTIVE DATE

**A.**     **Conditions to Confirmation of the Plan.**

Confirmation of the Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtor: The Court shall have signed the Confirmation Order.

**B.**     **Effect of Failure of Conditions to Confirmation.**

If any one or more of the conditions in Section 7(A) of the Plan is not met, the Debtor may, at its option, withdraw the Plan and, if withdrawn, the Plan shall be of no further force or effect.

**C.**     **Effective Date.**

Provided no stay of the Confirmation Order is then in effect, the Plan shall become effective on the Effective Date.

## XI.

## EFFECTS OF CONFIRMATION

**A.**     **Binding Effect of Plan.**

58302-001\DOCS_LA:179959.9

The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Debtor, any Entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be as fixed and adjusted pursuant to the Plan. Pursuant to Section 10(L) of the Plan, with respect to any taxes of the kind specified in Bankruptcy Code section 1146(c), the Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded.

**B.     Revesting of Property of Debtor.**

Upon the Effective Date, other than with respect to the Purchased Assets, title to all property of the Estate of the Debtor in the Chapter 11 Case shall revest in the Liquidating Debtor, free and clear of any Liens or Claims except those Liens and Claims expressly preserved by the Plan or the Confirmation Order, and shall be retained by the Liquidating Debtor for the purposes contemplated under the Plan. Without limiting the generality of the foregoing, all Litigation Recoveries, rights to Liquidation Proceeds, and all resulting Plan Proceeds earmarked for disbursement to Creditors under the Plan, shall vest in the Liquidating Debtor upon the Effective Date and shall no longer constitute property of the Estate.

**C.     Property Free and Clear.**

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall revest in the Liquidating Debtor shall be free and clear of all Claims, including Liens, interests, charges or other encumbrances of Creditors or Interest Holders, other than Liens specifically recognized and continued under the Plan. Following the Effective Date, the Liquidating Debtor may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

**D.     Limitation of Liability.**

The Debtor, the Committee, and their respective officers, directors, managers, employees, agents, advisors, accountants, attorneys and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Case or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Case; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan and shall not release any action (or inaction) constituting willful misconduct or gross negligence.

**E.     Releases.**

As part of the Plan, the releases set forth below shall be granted pursuant to the Plan and the Confirmation Order:

## 1. **Debtor's Release.**

On the Effective Date, subject to the Preserved Setoff Rights, the Debtor and Liquidating Debtor shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all Litigation or potential Litigation which it has or may have against any of its officers, directors or employees holding such a position as of the Confirmation Date, financial advisors, attorneys, partners, representatives and their respective property; provided, however, that the foregoing shall not operate as a waiver of or release from any Litigation or potential Litigation arising out of (i) any express contractual obligation owing by any such directors, officers, agents, financial advisors, attorneys, employees, partners, affiliates or representatives, or (ii) the willful misconduct or gross negligence of such directors, officers, agents, financial advisors, attorneys, employees, partners, affiliates, or representatives in connection with, related to, or arising out of the Chapter 11 Case, the pursuit of Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan.

## 2. **Other Releases.**

Each person or entity participating in distributions under the Plan or pursuant to the Plan, for itself and its respective successors, assigns, transferees, current and former officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall, by virtue of its acceptance of the payments made to it under the Plan, and each member of each Class that votes to accept or who is bound by the Plan, shall, by virtue of Bankruptcy Code sections 1126(c) and 1141(a), unless such person or entity has affirmatively indicated a refusal to agree to such release on the Ballot submitted in conjunction with the voting on the Plan, be deemed to have released any and all Claims and causes of action against (A) the Debtor or Liquidating Debtor, and their respective officers, directors, controlling shareholders, managers, employees, agents, advisors, accountants, attorneys and representatives and their respective property, and (B) the members of the Committee in their capacity as such, and their respective officers, directors, managers, employees, agents, advisors, accountants, attorneys and representatives and their respective property, arising prior to the Effective Date. Nothing in the previous sentence shall be deemed to release the Debtor and Liquidating/Debtor from liability for (i) Claims filed before the Administrative Claims Bar Date, the General Bar Date and (ii) Claims scheduled by the Debtor that are not contingent, disputed or unliquidated; provided, however, that, notwithstanding clause (i) above, the Debtor or Liquidating Debtor, as appropriate, may object to the allowance of any Claim on any ground.

Each party to which this section of the Plan applies shall be deemed to have granted the releases set forth herein notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle, including section 1542 of the California Civil Code, which would limit the effect of such releases to those Claims or causes of action actually known or suspected to exist at the time of Confirmation.

Section 1542 of the California Civil Code generally provides as follows: "A general release does not extend to claims which the creditors does not know or suspect to exist in his favor at the time of executing the Release, which if known by him must have materially affected his settlement with the debtor."

## F.    Injunction.

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor, the Liquidating Debtor or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Liquidating Debtor, the Estate, or any property of the Debtor, the Liquidating Debtor, or the Estate, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Liquidating Debtor, the Estate, or any property of the Debtor, the Liquidating Debtor, or the Estate, with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Liquidating Debtor, the Estate, or any property of the Debtor, the Liquidating Debtor, or the Estate, with respect to any such Claim or Interest; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, the Liquidating Debtor, the Estate, or any property of the Debtor, the Liquidating Debtor, or the Estate, with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this section shall prohibit the Holder of a timely-filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the Liquidating Debtor under the Plan.

## G.    Post-Confirmation Liability of Responsible Officer and Disbursing Agent.

The Responsible Officer and the Disbursing Agent and their consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of his or her duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent or which constitute willful misconduct. However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct. In addition, the Liquidating Debtor and the Estate shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys'

40

fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Debtor and the Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Debtor and the Estate. To the extent the Liquidating Debtor indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Responsible Officer in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Plan Expenses. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

### H.   <u>Insurance.</u>

On or after the Effective Date, the Responsible Officer and the Disbursing Agent shall obtain a fidelity bond or similar insurance. In addition, the Responsible Officer may obtain (if available) directors' and officers' liability insurance or errors and omission insurance (or equivalent insurance), provided that such insurance is available at a reasonable price. The cost of any fidelity bond or insurance obtained under this Section 8H shall be a Plan Expense.

**XII.**

**<u>RETENTION OF JURISDICTION</u>**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

i.    To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, or any controversy as to the classification of a Claim in a particular Class under the Plan;

ii.   To administer the Plan, the Plan Assets, and the Plan Proceeds;

iii.  To liquidate any Disputed Claims;

iv.   To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

v.    To hear and determine any and all motions and/or objections to fix and allow any Claims arising therefrom;

vi.   To hear and determine any and all applications by Professionals for an award of Professional Fees;

vii.  To enable the Liquidating Debtor to commence and prosecute any Litigation which may be brought after the Effective Date;

viii. To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding

41

interpretation of the Plan or any agreement, document or instrument contemplated by the Plan;

ix.    To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

x.    To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

xi.    To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; and

xii.    To close the Chapter 11 Case when administration of the case has been completed.

## XIII.

## MISCELLANEOUS

### A.    Revocation of Plan of Reorganization.

The Debtor reserves the right to revoke and withdraw the Plan at any time on or before the Confirmation Date. If the Debtor revokes or withdraws the Plan pursuant to this section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

### B.    Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### C.    Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware.

**D.**     **Exhibits.**

All exhibits attached to the Plan, the Plan Supplement, or the Disclosure Statement are, hereby incorporated into the Plan. The final version of all Exhibits to the Plan, the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached hereto or thereto. The Debtor reserves the right to make nonsubstantive changes and corrections to such Exhibits in advance of the Confirmation Hearing. If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing

**E.**     **Notices.**

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first class mail or via facsimile with electronic confirmation of receipt as follows:

**If to the Debtors:**

(By Mail or Facsimile)

> Pachulski Stang Ziehl & Jones LLP
> 919 North Market Street
> 17th Floor
> Wilmington, DE 19899
> Tel. 302-652-4100, Fax 302-652-4400
> Attn:  Laura Davis Jones, Esquire
>
> -or-
>
> Scouler & Company
> 445 Park Avenue, 10th Floor
> New York, NY 10022
> Tel. (212) 361-1140, Fax (917) 322-2105
> Attn:  Daniel Scouler

**F.**     **Reservation of Rights.**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any

43

statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Chapter 11 Case involving the Debtor, except with respect to Confirmation of the Plan.

**G.      Computation of Time Periods.**

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

**H.      Defects, Omissions and Amendments.**

The Debtor may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123, the Debtor has complied with Bankruptcy Code section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code section 1129.

**I.      Filing of Additional Documents.**

The Debtor shall file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**J.      Successors and Assigns.**

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such entity.

**K.      Setoffs and Recoupments.**

The Disbursing Agent may, but shall not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of a Claim, any claim of any nature whatsoever that the Debtor, the Liquidating Debtor, or the Estate, as applicable, may have

44

against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtor, the Liquidating Debtor, or the Estate, against such Holder.

## L.    Securities Exemption.

Any rights issued under, pursuant to or in effecting the Plan, and the offering and issuance thereof by any party, including without limitation, the Liquidating Debtor or the Disbursing Agent, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, section 1145 of the Bankruptcy Code.

## M.    Plan Interest Rate.

If and to the extent it is determined by the Bankruptcy Court that interest is required to be paid on an Allowed Claim other than as set forth in the Plan, the interest rate to be used shall be the Plan Interest Rate as determined by the Bankruptcy Court for such Claim.

## N.    Implementation.

Upon Confirmation, the Debtor shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

## O.    Record Date.

To the extent a record date is required for implementation of the Plan, the record date shall be the voting record date established by the Bankruptcy Court in the order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

## P.    Certain Actions.

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors or stockholders of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the Debtor is chartered, organized or incorporated, without any requirement of further action by the directors and stockholders of the Debtor.

Effective upon the Effective Date, the Debtor's formation documents shall be deemed amended to prohibit the issuance by the Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or as soon as practicable following the Effective Date, the Responsible Officer shall be authorized to cancel, annul and extinguish all Interests.

**Q.    Dissolution of Committee.**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case. The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered or expenses incurred after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to Section 2(C) of the Plan.

**R.    Waiver of Ten (10) Day Stay.**

Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the ten (10) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the ten (10) day stay of Bankruptcy Rule 6004(g).

**S.    Substantial Consummation.**

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

## XIV.

## SUMMARY OF DISTRIBUTABLE ASSETS

**A.    Non-Litigation Assets**

Debtor estimates that, as of a projected Effective Date of May 31, 2008, Debtor will have cash on hand from the liquidation of estate assets of at least $8 million. From this amount, Debtor must pay $3.8 million in estimated Priority Claims and $700,000 in Administrative Claims that Debtor estimates will ultimately be allowed. The remaining fund would therefore be approximately $3.2 million. Any augmentation to this amount for distribution on General Unsecured Claims would only derive from successful Litigation.

**B.    Litigation**

Attached hereto as Exhibit B is a summary exhibit including the various claims constituting Litigation (the "Litigation Schedule") that the Debtor has identified to date based on its investigation. As indicated on the Litigation Schedule, there are a multitude of claims held by the Debtor against various parties. There is, of course, no certainty that the estimated maximum "Amount Sought" identified on the Litigation Schedule will be realized. For obvious reasons of

litigation strategy and confidentiality, Debtor cannot discuss the strengths and weaknesses of individual cases in this Disclosure Statement.

## XV.

## RISK FACTORS

Because the Plan is essentially a "pot plan," Distributions to Holders of Allowed General Unsecured Claims are subject to the success of the Liquidating Debtor in administering the Litigation and implementing the Plan efficiently. Notwithstanding the Debtor's best efforts to provide reasonable estimates of the expected return to the Holders of Claims, there is always a possibility that the efforts of the Liquidating Debtor will be more expensive or less successful than predicted. Additionally, there may be significant delay before any distribution is made on account of Allowed Claims, given the uncertainties of the Litigation. Additionally, given its magnitude, the Debtor must favorably resolve or estimate the WARN Act Claim before the Effective Date can occur. As indicated, there is no certainty that Debtor will be successful in this litigation.

For the reasons set forth in this Disclosure Statement, the Debtor believes that the very same risks described herein are present in and significantly greater to Creditors in a chapter 7 case.

## XVI.

## BEST INTEREST OF CREDITORS TEST

Confirmation of the Plan requires, among other things, that each holder of a claim in an impaired class and each holder of an interest either: (a) accepts the Plan; or (b) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "Best Interests Test."

## A.    Chapter 7

To determine the value that the holders of impaired claims and interests would receive if the Debtor were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case. Bankruptcy Code section 704 requires a chapter 7 trustee to collect and reduce to money the property of the estate as expeditiously as is compatible with the best interests of parties in interest.

The Cash available for satisfaction of Allowed Claims would consist of the proceeds resulting from the disposition of the Debtor's few remaining assets, augmented by the Cash, if any, held by the Debtor at the time of the commencement of the chapter 7 case. Any such Cash amount would then be reduced by the amount of any Allowed Claims secured by such assets, the costs and expenses of the liquidation and such additional Administrative Claims and other priority claims that may result from the use of chapter 7 for the purposes of liquidation.

47

The costs of liquidation under chapter 7 would include fees payable to a trustee in bankruptcy, as well as those that might be payable to his or her attorneys and to other professionals that such trustee may engage, plus any unpaid expenses incurred by the Debtor during the Chapter 11 Case that would be allowed in the chapter 7 case, such as compensation for attorneys, appraisers, accountants or other professionals and costs and expenses of the Debtor and the Committee. Such Administrative Claims would have to be paid in Cash, in full from the liquidation proceeds before the balance of those proceeds could be made available to pay other Claims.

**B.    Liquidation Analysis**

Pursuant to Bankruptcy Code section 1129(a)(7), unless there is unanimous acceptance of the Plan by an impaired Class, the Debtor must demonstrate, and the Bankruptcy Court must determine that with respect to such Class, each holder of a Claim will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date of the Plan. This requirement is commonly referred to as the "Best Interests of Creditors Test."

The Plan satisfies the Best Interests of Creditors Test. The Plan provides greater recovery to the Holders of Allowed General Unsecured Claims than such Holders would receive under a liquidation under chapter 7 primarily because the Plan avoids a layer of administrative expense associated with the appointment of a chapter 7 trustee, while increasing the efficiency of administrating the Debtor's assets for the benefit of its Creditors. Most obviously (with respect to efficiency), the Debtor and the Committee have already completed much of the analysis concerning the Litigation that a Chapter 7 trustee would have to reevaluate before such Litigation would commence.

Moreover, in chapter 7 cases, the chapter 7 trustee would also be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even though the Debtor has already accumulated much of the funds and have already incurred many of the expenses associated with generating those funds. Accordingly, the Debtor believes that there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by the Debtor, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed, including possibly substantial funds handed over to the Liquidating Debtor by the Debtor. It is also anticipated that a chapter 7 liquidation would result in delay in the Distributions to Creditors. Among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than 90 days following conversion of the case to chapter 7. Fed. R. Bankr. P. 3002(c). Hence, a chapter 7 liquidation would not only delay Distributions, but raise the prospect of additional Claims that were not asserted in the Chapter 11 Case. Based on the foregoing, the Plan provides an opportunity to bring the greatest return to Creditors.

**XVII.**

## CERTAIN FEDERAL INCOME TAX
## CONSEQUENCES OF THE PLAN

The following discussion is a summary of certain U.S. federal income tax consequences of the Plan to the Debtor and to Holders of Claims and Interests. This discussion is based on the IRC, Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules and pronouncements of the IRS as in effect on the date hereof. Due to the complexity of certain aspects of the Plan, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims (including Claims within the same Class) and Interests, the Holder's status and method of accounting (including Holders within the same Class) and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are subject to significant uncertainties. No legal opinions have been requested from counsel with respect to any of the tax aspects of the Plan and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. Furthermore, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtor and the Holders of Claims and Interests.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtor or the Holders of Claims or Interests in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies, regulated investment companies and foreign taxpayers). This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue. No aspect of foreign, state, local or estate and gift taxation is addressed.

THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PERSONAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

## A.    Consequences to Debtor

Under the Plan, the Debtor is transferring the Creditor Fund to the Liquidating Debtor. This transfer of the Creditor Fund may result in the recognition of taxable gain or loss by the Debtor. To the extent that any federal income tax liability results from the transfer of the Creditor Fund to the Liquidating Debtor, the Liquidating Debtor will pay the resulting tax to the IRS. The Plan also provides that the Debtor will eventually be liquidated and dissolved. As a result, there will be no net operating loss or capital loss carry-forwards or other tax attributes available to the Debtor following the Effective Date after giving effect to the transactions contemplated by the Plan.

## B.    Federal Income Tax Treatment of Creditor Fund

### 1.    Classification of Creditor Fund

Pursuant to the Plan, the Debtor will transfer the Creditor Fund to the Liquidating Debtor, and the Liquidating Debtor will become obligated to make Distributions in accordance with the Plan. The Plan provides, and this discussion assumes, that the Creditor Fund will be treated for federal income tax purposes as a "creditor trust," as defined in Treasury Regulation Section 301.7701 4(d), and will therefore be taxed as a grantor trust, of which the holders of General Unsecured Claims ("Beneficiaries") will be treated as the owners and grantors thereof. Accordingly, because a grantor trust is treated as a pass-through entity for federal income tax purposes, no tax should be imposed on the Liquidating Debtor itself or on the income earned or gain recognized by the Liquidating Debtor. Instead, the Beneficiaries will be taxed on their allocable shares of such net income or gain in each taxable year, whether or not they received any distributions from the Liquidating Debtor in such taxable year.

Although the Liquidating Debtor has been structured with the intention of complying with guidelines established by the IRS in Rev. Proc. 94-45, 1994-2 C.B. 684, for the formation of creditor trusts, it is possible that the IRS could require a different characterization of the Liquidating Debtor, which could result in different and possibly greater tax liability to the Liquidating Debtor and/or the Holders of Allowed Claims. No ruling has been or will be requested from the IRS concerning the tax status of the Liquidating Debtor, and there can be no assurance the IRS will not require an alternative characterization of the Liquidating Debtor. If the Liquidating Debtor were determined by the IRS to be taxable not as a creditor trust, as described in Treasury Regulation Section 301.7701 4(d), the taxation of the Liquidating Debtor and the transfer of assets by the Debtor to the Liquidating Debtor could be materially different than is described herein and could have a material adverse effect on the Holders of Allowed Claims.

### 2.    Tax Reporting

The Liquidating Debtor will file tax returns with the IRS as a grantor trust in accordance with Treasury Regulation Section 1.671-4(a). The Liquidating Debtor will also send to each Beneficiary a separate statement setting forth the Beneficiary's allocable share of items of income, gain, loss, deduction or credit and will instruct the Beneficiary to report such items on such Beneficiary's federal income tax return.

## C.    Consequence to Holders of Claims

The federal income tax consequences of the Plan to a Holder of a Claim will depend upon several factors, including but not limited to: (i) the origin of the Holder's Claim, (ii) whether the Holder is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above), (iii) whether the Holder reports income on the accrual or cash basis method, (iv) whether the Holder has taken a bad debt deduction or worthless security deduction with respect to this Claim and (v) whether the Holder receives distributions under the Plan in more than one taxable year. HOLDERS ARE

58302-001\DOCS_LA:179959.9

STRONGLY ADVISED TO CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS.

### 1.    Holders of Claims

Generally, a Holder of an Allowed Claim will recognize gain or loss equal to the difference between the "amount realized" by such Holder and such Holder's adjusted tax basis in the Allowed Claim. The "amount realized" is equal to the sum of the Cash and the fair market value of any other consideration received under the Plan in respect of a Holder's Claim, including, to the extent such Holder is a Beneficiary, the fair market value of each such Holder's proportionate share of the assets transferred to the Liquidating Debtor on behalf of and for the benefit of such Holder (to the extent that such Cash or other property is not allocable to any portion of the Allowed Claim representing accrued but unpaid interest (see discussion below)).

The transfer of Assets to the Liquidating Debtor by the Debtor should be treated for federal income tax purposes as a transfer of such Assets to the Holders of Allowed Claims to the extent they are Beneficiaries of the Liquidating Debtor, followed by a deemed transfer of such Assets by such Beneficiaries to the Liquidating Debtor. As a result of such treatment, such Holders of Allowed Claims will have to take into account the fair market value of their pro rata share, if any, of the Assets transferred on their behalf to the Liquidating Debtor in determining the amount of gain realized and required to be recognized upon consummation of the Plan on the Effective Date. In addition, since a Holder's share of the assets held in the Liquidating Debtor may change depending upon the resolution of Disputed Claims, the Holder may be prevented from recognizing any loss in connection with consummation of the Plan until the time that all such Disputed Claims have been resolved. The Liquidating Debtor will provide the Holders of Allowed Claims with valuations of the assets transferred to the Liquidating Debtor on the behalf of and for the benefit of such Holders and such valuations should be used consistently by the Liquidating Debtor and such Holders for all federal income tax purposes. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR ALLOWED CLAIMS.

### 2.    Distributions in Discharge of Accrued but Unpaid Interest

Pursuant to the Plan, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claims, with any excess allocated to accrued but unpaid interest. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes. Holders of Allowed Claims not previously required to include in their taxable income any accrued but unpaid interest on an Allowed Claim may be treated as receiving taxable interest, to the extent any consideration they receive under the Plan is allocable to such accrued but unpaid interest. Holders previously required to include in their taxable income any accrued but unpaid interest on an Allowed Claim may be entitled to recognize a deductible loss, to the extent that such accrued but unpaid interest is not satisfied under the Plan. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR ALLOWED CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED BUT UNPAID INTEREST.

51

3.    **Character of Gain or Loss; Tax Basis; Holding Period**

The character of any gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss recognized by a Holder of Allowed Claims under the Plan will be determined by a number of factors, including, but not limited to, the status of the Holder, the nature of the Allowed Claim in such Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Allowed Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Allowed Claim. The Holder's aggregate tax basis for any consideration received under the Plan will generally equal the amount realized in the exchange (less any amount allocable to interest as described in the next paragraph). The holding period for any consideration received under the Plan will generally begin on the day following the receipt of such consideration.

D.    **Consequences to Holders of Interests**

Pursuant to the Plan, all Interests in the Debtor are being extinguished. A Holder of any Interest extinguished under the Plan should generally be allowed a worthless stock deduction in an amount equal to the Holder's adjusted basis in the Holder's Interest. A worthless stock deduction is a deduction allowed to a Holder of a corporation's stock for the taxable year in which such stock becomes worthless. If the Holder held the Interest as a capital asset, the loss will be treated as a loss from the sale or exchange of such capital asset. Capital gain or loss will be long-term if the Interest was held by the Holder for more than one year and otherwise will be short-term. Any capital losses realized generally may be used by a corporate Holder only to offset capital gains, and by an individual Holder only to the extent of capital gains plus $3,000 of other income.

E.    **Withholding**

All Distributions to Holders of Allowed Claims under the Plan are subject to any applicable withholding, including employment tax withholding. The Debtor and/or the Creditor Trust will withhold appropriate employment taxes with respect to payments made to a Holder of an Allowed Claim that constitutes a payment for compensation. Payors of interest, dividends, and certain other reportable payments are generally required to withhold thirty percent (30%) of such payments if the payee fails to furnish such payee's correct taxpayer identification number (social security number or employer identification number), to the payor. The Liquidating Debtor may be required to withhold a portion of any payments made to a Holder of an Allowed Claim if the Holder (a) fails to furnish the correct social security number or other taxpayer identification number ("TIN") of such Holder, (b) furnishes an incorrect TIN, (c) has failed to properly to report interest or dividends to the IRS in the past, or (d) under certain circumstances, fails to provide a certified statement signed under penalty of perjury, that the TIN provided is the correct number and that such Holder is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX

PROFESSIONAL. THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT SUCH HOLDER'S TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

# XVIII.
## CONCLUSION

The Debtor believes that the Plan is in the best interest of Creditors and urges Creditors to vote to accept the Plan.


Dated: March 12th, 2008


MORTGAGE LENDERS NETWORK USA, INC.

*Daniel Scouler*

By: Daniel Scouler
Its: Chief Restructuring Officer


Dated: March 12, 2008


Submitted by:          PACHULSKI STANG ZIEHL & JONES LLP


/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
Brad R. Godshall (CA Bar No. 105438)
David M. Bertenthal (CA Bar No. 167624)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel for Debtor and Debtor in Possession

# EXHIBIT A

**Exhibit "A"**

**PROFESSIONAL FEES**

| Professional | Fees Paid | Fees Unpaid |
|---|---|---|
| Blank Rome LLP (Committee Counsel) [Through September 2007] | $1,589,602.30 | $55,574.20 |
| FTI Consulting, Inc. (Financial Advisors to Committee) [Through August 2007] | $482,852.96 | $0 |
| Pachulski Stang Ziehl & Jones LLP (Debtor's Counsel) [Through December 2007] | $2,288,576.40 | $233,347.41 |
| Thelen Reid Brown Raysman & Steiner LLP (Regulatory Counsel - CT) [Through August 2007] | $576,486.00 | $63,751.12 |
| Scouler & Company (Responsible Officer) [Through January 2008] | $2,999,919.15 | $10,000.00 |
| The Trumbull Group (Claims Agent) [Through February 2008] | $154,736.82 | $0 |
| O'Connor Davies Mumms & Dobbins (Tax Accountants) [Through February 2008] | $108,620.91 | $22,926.48 |

# EXHIBIT B

Exhibit "B"

## LITIGATION

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Merrill Lynch Bank USA (et. al) | $25,507,000 | Breach of Contract and Avoidance Theories |
| Greenwich Capital Financial Products Inc | $5,661,500 | Breach of Contract and Avoidance Theories |
| Goldman Sachs & Co Inc. | $2,102,500 | Breach of Contract and Avoidance Theories |
| Lehman Bothers Inc. | $2,143,000 | Breach of Contract and Avoidance Theories |
| Wells Fargo | $2,300,000 | Unreimbursed advances on loan servicing rights |
| EMAX Financial Group LLC | $9,100,000 | Tax and Insurance Advances |
| Residential Funding Corp | Undetermined - Demands made by Creditors Committee | Breach of Contract and Avoidance Theories |
| Countrywide Home Loans | $414,000 | Holdbacks on loan sales and servicing rights |
| AT&T (also under SBC below) 175 E. Houston San Antonio, TX 78205 | $72,082 | Preference |
| Adteractive Corp Legal Dept 303 Second Street Suite 375 South San Francisco, CA 94107 415-762-2266 | $260,264 | Preference |
| Alden Staffing Solutions 108 Corporate Park Drive suite 220 White Plains, NY 10604 914-253-6622 | $33,986 | Preference |

56

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Akibia Network & Security Solutions<br>4 Technology Dr.<br>Westborough, MA 01581<br>508-621-5100 | $23,654 | Preference |
| Fidelity Information Services<br>601 Riverside Avenue<br>Jacksonville, FL 32204<br>904-854-5000 | $164,559 | Preference |
| NBS Pinnacle<br>dba The Alter Group<br>5500 West Howard St<br>Skokie, IL 60077<br>847-676-4300 | $283,808 | Preference |
| American Express<br>Exec Offices: 200 Vesey Street<br>New York, NY 10285<br>212-640-2000 | $113,875 | Preference |
| American Lending Corporation<br>11459 Cronhill Dr. Suite M<br>Owings Mills, MD 21117<br>410-654-6897 | $3,700 | Preference |
| Associated Software Consultants<br>7251 Engle Rd<br>Suite 300<br>Middleburg Heights, OH 44130<br>860-344-5702/ 440-826-1010 | $42,623 | Preference |
| Brand Taxi<br>Nine Greenwich Office Park<br>Greenwich, CT 06831<br>203-618-4180/ 203-618-1100 | $108,781 | Preference |
| Brown Raysman Millstein Felder and Steiner, LLP<br>City Place II<br>185 Asylum St<br>Hartford, CT 06103<br>860-275-6400 | $33,730 | Preference |

57

# Mortgage Landers Network USA, INC (as Debtor)
## Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Business Objects Americas Corporate HQ 3030 Orchard Parkway San Jose, CA 95134 408-953-6000 | $61,964 | Preference |
| C & S Appraisal Services dba CoreLogic Appraisals First American CoreLogic 10360 Old Placerville Road Sacramento, CA 95827 888-288-2009 | $63,710 | Preference |
| Cadwalader, Wickersham & Taft, LLP One World Financial Center New York, NY 10281 212-504-6000 | $98,386 | Preference |
| Century Business Center First Phase, LP Limited Partnership 44 Orchard Road West Hartford, CT 06117 | $29,476 | Preference |
| Countrywide Home Loans 4500 Park Granada Calabasas, Ca 91302 818-225-3000 | $35,632 | Preference |
| DBSI Missouri Lease Co. 1550 S. Tech Lane Meridian, ID 83642 | $67,533 | Preference |
| Dynatek, Inc 17488 Laurel Park Dr. North Livonia, MI 48152 800-462-5545 | $150,182 | Preference |
| Equity One, Inc. 301 Lippincott drive Marlton, NJ 08053 856-296-2600 | $31,925 | Preference |

58302-001\DOCS_LA:179959.9

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Executive Financial Services, Inc<br>75 Searles Rd.<br>Windham, NH 03087<br>(603) 890-9040 | $36,170 | Preference |
| Facilitec<br>4501 E. McDowell Rd.<br>Phoenix, AZ 85008<br>602-275-0101 | $6,570 | Preference |
| First American Flood Data Service<br>11902 Burnett Rd. Suite 400<br>Austin, TX 78758<br>512-834-9595 | $156,908 | Preference |
| First Advantage Credco<br>CBA Information Services<br>IV Executive Campus<br>Cherry Hill, NJ 08002<br>800-457-3345 | $269,037 | Preference |
| Freese Construction Co., Inc.<br>1355 Terrell Mill Rd. Bldg. 1470 Suite 100<br>Marietta, GA 30067<br>770-850-9393 | $40,745 | Preference |
| Hansen Quality<br>2204 Garnet Ave., Suite 203<br>San Diego, CA 92109<br>619-483-6101 | - | |
| Haworth Inc.<br>One Haworth Center<br>Holland, MI 49423<br>616-393-3000 | $83,200 | Preference |
| IFS North America<br>10 N. Martingale Rd.<br>Schaumberg, IL 60173<br>847-592-0200 | $54,667 | Preference |
| Lending Tree<br>11115 Rushmore Drive<br>Charlotte, NC 28277<br>704-541-5351 | $73,070 | Preference |

# Mortgage Landers Network USA, INC (as Debtor)
## Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| LexisNexis Public Records Data Services, Inc.<br>125 Park Ave Suite 2200<br>New York, NY 10017<br>212-309-8100 | $33,531 | Preference |
| Liberty Property, LP<br>5 Walnut Grove Dr, Suite 200<br>Horsham, PA 19044 | $178,028 | Preference |
| Logicalis<br>1750 South Telegraph Rd., Suite 300<br>Bloomfield Hills, MI 48302<br>248-745-5400 | $50,847 | Preference |
| Lower My Bills.com<br>2401 Colorado Ave., Suite 200<br>Santa Monica, CA 90404 | $185,627 | Preference |
| Marriott International<br>Marriott Drive<br>Washington, D.C. 20058<br>301-380-3000 | $77,965 | Preference |
| MERS<br>1595 Spring Hill Rd Suite 310<br>Vienna, VA 22182<br>757-498-4488 | $51,721 | Preference |
| MetAmerica Mortgage Bankers<br>250 International Parkway<br>Suite 134<br>Heathrow, FL 32746<br>1800-790-4080 | $21,330 | Preference |
| MTM Technologies<br>1200 High Ridge Road<br>Stamford, CT 06905<br>212-301-4307 | $9,769 | Preference |
| Middletown Main Realty Trust<br>31 Peterborough St, Suite B2<br>Boston, MA 02215 | $35,254 | Preference |

58302-001\DOCS_LA:179959.9

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Midfield Corporation<br>213 Court St., P.O. Box 891<br>Middletown, CT 06457<br>860-638-5154 | $191,767 | Preference |
| Mutual Trust (MTL Insurance)<br>1200 Jorie Blvd., Suite 100<br>Oakbrook, IL 60523 | $36,185 | Preference |
| National Asset Recovery Services, Inc.<br>16253 Swingley Ridge Road Suite 300<br>Chesterfield, MO 63017<br>636-530-7985 | - | |
| NexTag<br>1300 S. El Camino Real, 6th Floor<br>San Mateo, CA 94402<br>650-645-4700 | $39,583 | Preference |
| Office Depot<br>4 Enterprise Road<br>Billerica, MA 01821<br>860-638-6300 ext. 7003 | $80,381 | Preference |
| Premier Mortgage Funding<br>2633  S. Lapeer Rd. Suite L<br>Lake Orion, MI 43710 | $17,103 | Preference |
| Regh Associates<br>110 Green St., Suite 1105<br>New York, NY 10012<br>212-219-3315 | - | |
| Relational, LLC<br>dba Relational Technology Solutions<br>3701 Algonquin Rd., Suite 600<br>Rolling Meadows, IL 60008<br>847-818-1700 | $131,154 | Preference |
| Residential Home Funding Corporation<br>520 North State Rd.<br>Briarcliff Manor, NY 10510<br>914-923-4300 | $16,101 | Preference |

58302-001\DOCS_LA:179959.9

# Mortgage Landers Network USA, INC (as Debtor)
## Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Salesforce.com, Inc.<br>The Landmark @ One Market Square,<br>Suite 300<br>San Francisco, CA 94105<br>415-901-7000 | $491,318 | Preference |
| SBC<br>(This is new AT & T bill)<br>address above under AT&T | $154,172 | Preference |
| SBC Internet Services, Inc.<br>address above under AT&T | $43,718 | Preference |
| Scott & Associates, Inc.<br>1200 Lake Hearn Dr., Suite 275<br>Atlanta, GA 30319<br>404-252-1200 | $36,979 | Preference |
| Siemens Building Technologies, Inc.<br>1745 Corporate Dr. suite 240<br>Norcross, GA 30093<br>770-935-2000 | - | |
| Standard Insurance Co<br>920 S.W. Sixth Ave.<br>Portland, OR 97204 | $89,421 | Preference |
| Sungard Availability Services, LP<br>680 E. Swedesford Rd.<br>Wayne, PA 19087<br>1800-825-2518 | $38,080 | Preference |
| SwiftView, Inc.<br>15605 SW 72nd Ave.<br>Portland, OR 97224<br>971-223-2600 | $1,708 | Preference |
| Grant Thornton, LLP<br>175 W. Jackson Blvd 20th floor<br>Chicago, IL 60604<br>617-723-7900 | $44,000 | Preference |

58302-001\DOCS_LA:179959.9

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Union Capital Mortgage Business Trust<br>45 Braintree Hill Park Suite 400<br>Braintree, MA<br>781-848-6060 | $28,209 | Preference |
| Uvantage<br>2300 East Lincoln Highway Suite 609<br>Langhorne, PA 19047<br>215-757-4414 | $22,172 | Preference |
| Venture Encoding Services, Ltd.<br>4401 Cambridge<br>Fort Worth, TX 76155<br>817-283-9500 | $100,374 | Preference |
| VLG Wallingford Partners, LLC<br>1552 Post Road<br>Fairfield, CT 06824<br>203-259-8000 | $41,920 | Preference |
| Wilshire Credit Corporation<br>14523 SW Millikan Way, Suite 200<br>Beaverton, OR 97005<br>503-223-5600 | - | |
| Young's Printing<br>182 Court St.<br>Middletown, CT 06457<br>860-347-8567 | $32,611 | Preference |
| www.555-1212.com, Inc. | $7,130.86 | Preference |
| A. R. Mazzotta | $27,239.73 | Preference |
| Adams & Knight Advertising, Inc. | $5,830.00 | Preference |
| ADT Security Services Inc | $11,500.00 | Preference |
| Alliance HR Network | $5,558.64 | Preference |
| American General Assurance | $15,684.24 | Preference |
| America's Lending Partners, Inc. | $12,933.00 | Preference |

63

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Aramark | $8,823.88 | Preference |
| Arizona Public Service Company | $24,600.00 | Preference |
| Astron Resource Consulting Solutions, LLC | $5,940.00 | Preference |
| BEI | $13,500.00 | Preference |
| BKM Total Office | $29,242.28 | Preference |
| Blair Mill Inn | $7,715.00 | Preference |
| Bombardier Aerospace Corporation | $12,215.00 | Preference |
| Carol Rugh, Inc. | $6,890.00 | Preference |
| Citizens Community Bank | $13,959.00 | Preference |
| Clayton Services, Inc. | $8,030.00 | Preference |
| Consumer Law Group, LLC | $10,000.00 | Preference |
| CounselorLibrary.com., LLC | $6,500.00 | Preference |
| CRMfusion Inc. | $5,000.00 | Preference |
| Data Works, Inc. | $16,381.70 | Preference |
| DataQuick Info Systems Inc | $7,830.30 | Preference |
| Delta Dental | $29,991.60 | Preference |
| DJont/EPT Leasing, LLC | $8,802.72 | Preference |
| Equifax Consumer Services, Inc. | $128.00 | Preference |
| Equifax Credit Information Services | $5,292.99 | Preference |
| Esker, Inc. | $5,283.69 | Preference |
| Essex Commercial Construction, LLC | $8,599.50 | Preference |

58302-001\DOCS_LA:179959.9

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| eStyle Software Corporation | $7,000.00 | Preference |
| FDN Communications, Inc. | $7,617.37 | Preference |
| Fidelity Security Life | $20,252.29 | Preference |
| First Call Mortgage Co., Inc. | $12,539.13 | Preference |
| FlexAmerica, Inc. | $9,225.70 | Preference |
| Flo-Tech, LLC | $39,753.18 | Preference |
| Fraser Advanced Information Systems | $6,337.22 | Preference |
| General Motors Acceptance Corporation | $23,421.25 | Preference |
| Gensler Architecture Design-Planning PC | $11,235.82 | Preference |
| GMAC Mortgage Corporation | $17,324.36 | Preference |
| GMAC-RFC Receivables | $1,377.29 | Preference |
| Graphnet, Inc | $9,512.07 | Preference |
| Harper & Whitfield, P.C. | $5,453.00 | Preference |
| Harty Press, Inc | $12,255.46 | Preference |
| Hasler, Inc | $40,049.30 | Preference |
| Henley Consulting, Inc. | $9,884.97 | Preference |
| Hilb Rogal & Hobbs | $86.25 | Preference |
| Hilb, Rogal and Hobbs of Ct, LLC | $11,663.00 | Preference |
| iData, LLC. | $46,095.00 | Preference |
| Incom, LLC | $25,492.00 | Preference |
| Inside Mortgage Finance Publications, Inc | $5,815.00 | Preference |

58302-001\DOCS_LA:179959.9

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Intellidyn Corp | $15,488.08 | Preference |
| Isarla, Inc. | $6,190.00 | Preference |
| J. Morrissey & Company, Inc. | $16,296.46 | Preference |
| Jacobs & Prosek, LLC | $23,685.99 | Preference |
| Jeffersonwells International | $38,499.45 | Preference |
| Key Tech, LLC | $42,985.12 | Preference |
| KNB Communications, LLC | $10,500.00 | Preference |
| Kroll Factual Data, Inc. | $21,562.59 | Preference |
| LandAmerica Credit Services | $20,506.34 | Preference |
| LandSafe, Inc. | $5,525.00 | Preference |
| Lending Solutions, Inc. | $12,463.75 | Preference |
| Liberty Bank | $49,987.92 | Preference |
| Lion, Inc. | $12,200.00 | Preference |
| Litton Loan Servicing, LP | $12,155.92 | Preference |
| Madison Square Phoenix, LLC | $26,508.06 | Preference |
| Middlesex Mutual Assurance Company | $16,480.75 | Preference |
| Middletown Hotel Associates | $43,959.81 | Preference |
| Monster, Inc. | $10,500.00 | Preference |
| Motivation Excellence, Inc. | $5,000.00 | Preference |
| Myrtle Alexander | $5,750.00 | Preference |
| Myrtle Alexander & The Housing Advocates | $8.37 | Preference |

66

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| National Creditors Connection, Inc. | $7,240.00 | Preference |
| Nations Home Mortgage Corp | $12,339.75 | Preference |
| Nationwide Appraisal Services Corp. | $27,845.00 | Preference |
| NBS Brookside 700/800, LLC | $40,919.68 | Preference |
| Onesource Facility Services, Inc. | $11,772.40 | Preference |
| PaeTec Communications, Inc. | $12,326.37 | Preference |
| Parsec Interact Inc. | $16,000.00 | Preference |
| PECO Energy Co | $7,213.32 | Preference |
| Peoples Home Equity, Inc. | $7,992.95 | Preference |
| Platinum Data Solutions, Inc. | $20,941.25 | Preference |
| Pony Express Inc | $7,466.00 | Preference |
| Quality Loan Network, Inc. | $7,192.00 | Preference |
| Quin Street Media, Inc. | $24,150.00 | Preference |
| Qwest Communications | $12,177.21 | Preference |
| Reserve Account- Pitney Bowes | $10,000.00 | Preference |
| Residential Home Loan Centers, LLC | $12,701.75 | Preference |
| Robert Half | $22,896.00 | Preference |
| Seko Worldwide | $11,268.03 | Preference |
| Shaner SPE Associates, LP | $20,997.27 | Preference |
| Software Spectrum, Inc. | $11,773.60 | Preference |
| Sovereign Bank | $12,178.00 | Preference |

67

# Mortgage Landers Network USA, INC (as Debtor)
# Potential/ Existing Litigation

| Party | Potential Amount Sought | Theory |
|---|---|---|
| Sprint | $12,250.78 | Preference |
| St. Clements, Inc. | $9,350.84 | Preference |
| Staffing Now, Inc. | $3,835.44 | Preference |
| Staples Business Advantage | $11,546.13 | Preference |
| Starwood Hotels + Resorts Worldwide, Inc. | $20,000.00 | Preference |
| Steelcase Financial Services, Inc. | $13,452.09 | Preference |
| Stillwood Inc. | $11,506.53 | Preference |
| TeleCommunications Systems, Inc. | $25,869.64 | Preference |
| Telmon, Inc. | $15,189.54 | Preference |
| The Cimino Group, Inc. | $7,756.80 | Preference |
| TheRealLead.com, LLC. | $7,140.00 | Preference |
| Verizon | $97.12 | Preference |
| Verizon Wireless | $17,005.44 | Preference |
| Walters Wicker Inc. | $5,730.00 | Preference |
| WebEx Communications, Inc. | $7,150.06 | Preference |

68

# EXHIBIT C

**Exhibit "C"**

## SCOULER RESUME

SCOULER ANDREWS INTERNATIONAL, LLC
59-128 OLOMANA ROAD
KAMUELA, HI 96743

**Daniel Scouler**
**Member**

Dan Scouler is a founding member of Scouler Andrews, LLC. Prior to establishing his firm, he was a Senior Managing Director of FTI Corporate Recovery, a wholly owned subsidiary of FTI Consulting, and the leader of FTI's interim management practice . With 30 years of experience assisting companies experiencing financial difficulty, Dan Scouler specializes in bankruptcy reorganization, out of court restructuring, and interim management. He has worked for debtors, financial institutions, boards of directors and creditor committees.

Mr. Scouler has been engaged in over a hundred in-court and out-of-court restructurings. He played a leading advisory role in the following bankruptcies: Deak & Co., Wheeling-Pittsburgh Steel, LTV, Allis Chalmers, Ernst Home Centers, Mercury Finance Company, National Auto Credit, Hechinger Company, AB Dick and numerous private companies. His recent interim management experience includes Chief Restructuring Officer of TVC, Inc., Wherehouse Entertainment, and interim CFO of NUI Corp.

An experienced expert witness on insolvency and reorganization matters, Mr. Scouler has given evidence on a broad range of issues including the creditors' motion for the appointment of a Chapter 11 Trustee, reorganization plan feasibility, business plan viability, valuations and the reasonableness of certain transactions.

Mr. Scouler's wide range of assignments have given him knowledge and insight into variety of industries including major manufacturing, retail, financing, leasing, broadcasting, airline, real estate, high technology, telecom and distribution.

Prior to joining Policano & Manzo, acquired by FTI in 2000, Mr. Scouler was Managing Director of two boutique investment banking firms, Meadowcroft Associates and Peers & Co. He was also a partner in the New York reorganization practices of Ernst & Young and Deloitte & Touche.

Mr. Scouler began his restructuring career at Touche Ross and then moved to the Canadian firm of Clarkson Gordon & Co., where he became partner in 1981. While at Clarkson Gordon, Mr. Scouler gained extensive operating and reorganization experience as Receiver and Manager of several of Canada's largest corporations, including Anil Hardboard and Fishery Products.

Mr. Scouler holds an honors degree in Business Administration from the University of Western Ontario and qualified as a Canadian Chartered Accountant in 1974.

225 WEST WACKER DRIVE, SUITE 1900
CHICAGO, IL 60606