IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MORTGAGE LENDERS NETWORK USA, INC., | : | Case No. 07-10146 (PJW) |
| | : | |
| Debtor. | : | |
| | : | |

**DECLARATION OF WILLIAM REHM REGARDING THE LIQUIDATING
TRUSTEE'S MOTION PURSUANT TO THE DEBTOR'S CONFIRMED PLAN OF
LIQUIDATION, BANKRUPTCY CODE SECTIONS 105 AND 554 AND BANKRUPTCY
RULE 6007 FOR AN ORDER (I) AUTHORIZING THE ABANDONMENT AND
DESTRUCTION OF CERTAIN RECORDS; AND (II) RELEASING AND
EXCULPATING THE LIQUIDATING TRUSTEE AND THE MLN TRUST FROM
FUTURE OBLIGATIONS TO RESPOND TO SUBPOENAS AND OTHER REQUESTS
<u>CONCERNING SUCH RECORDS</u>**

I, William Rehm, do hereby declare, under penalty of perjury, that:

1.      I am a consultant to the Mortgage Lenders Network MLN Trust (the "<u>Trust</u>"),

successor to the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>"), and I am a

former officer of the Debtor.  I report directly to Neil F. Luria, the Bankruptcy Court-appointed

liquidating trustee of the Trust (the "<u>Liquidating Trustee</u>").  I am authorized to make and submit

this declaration (the "<u>Declaration</u>") on behalf of the Trust regarding the *Liquidating Trustee's*

*Motion Pursuant To the Debtor's Confirmed Plan of Liquidating, Bankruptcy Code Sections 105*

*and 554 and Bankruptcy Rule 6007 For an Order (I) Authorizing the Abandonment and*

*Destruction Of Certain Records; and (II) Releasing and Exculpating the Liquidating Trustee and*

*the MLN Trust From Future Obligations to Respond to Subpoenas and Other Requests*

*Concerning Such Records* [Docket No. 3279] (the "<u>Motion</u>") [1].  Except as otherwise indicated,

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

all facts set forth in this Declaration are based on my personal knowledge, upon information learned from a review of the Debtor's books and records, and upon discussions with professionals in this case. If called upon to testify, I can and will testify competently to the facts sets forth herein.

## **BACKGROUND**

1.      Prior to its petition in bankruptcy, the Debtor was in the business of originating and servicing mortgage loans.

2.      On February 5, 2007, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.      During the course of its chapter 11 bankruptcy case, the Debtor completely ceased and exited its mortgage origination and servicing business and continued to exist as a debtor-in-possession solely for the purpose of liquidating its assets for the benefit of its creditors. Both in the ordinary course of its business, as well as pursuant to duly approved orders for the sale not in the ordinary course, the Debtor transferred over $19 billion worth of mortgage servicing rights to a variety of third parties during the pendency of its chapter 11 case and prior to the Effective Date (defined below). Following the transfer or sale of the Debtor's loans and servicing rights, the Debtor ceased to own any loans and the Debtor was released of any and all obligations it ever had to service any loans.

4.      On December 19, 2008, the Debtor filed its First Amended Plan of Liquidation of Mortgage Lenders Network USA, Inc. Under Chapter 11 of the Bankruptcy Code (the "Plan").

5.      On February 3, 2009, the Court entered the Order Confirming the Plan.

132578.01600/21936184v.4

6.     On June 10, 2009, the Plan became effective (the "Effective Date").  On the Effective Date, the Mortgage Lenders Network MLN Trust Agreement (the "Trust Agreement") was executed, creating the Trust and appointing Neil F. Luria as Liquidating Trustee.  On the Effective Date, among other things, all assets of the Debtor were transferred to the Trust.

7.     Since the Effective Date, pursuant to the Plan and the Trust Agreement, the Liquidating Trustee has overseen to a conclusion the remaining claims reconciliation and adversary litigation once pending in the Debtor's chapter 11 case.  The Trust has already made distributions to all holders of allowed administrative and priority claims and the Liquidating Trustee reasonably expects that a distribution to holders of general unsecured claims will be made in early 2011, notwithstanding any delays that may result from the objection to the Motion by the United States.

8.     Also since the Effective Date, the Liquidating Trustee, pursuant to the Plan and the Trust Agreement, has maintained the Debtor's written and electronic books and records created in the course of the Debtor's mortgage business operations (the "Records").  Since the Effective Date, the Liquidating Trustee has referred to the Records in order to reconcile proofs of claim filed against the Debtor, prepare tax filings and also to prepare for adversary litigation. The Liquidating Trustee has had no other reason to refer to the Records since the Effective Date other than to respond to occasional subpoenas and other requests for documents from third parties (the "Requests").

132578.01600/21936184v.4

## THE MOTION

9.     On January 6, 2011, the Liquidating Trustee, by his counsel Blank Rome LLP, moved the Court for an order (i) authorizing him, in the exercise of his business judgment, to abandon and destroy the Records; and (ii) releasing and exculpating the Liquidating Trustee and the Trust from the obligation to respond to future Requests concerning such Records.

### The Records

10.     As the Trust is almost fully wound-up, the Liquidating Trustee determined to destroy the Records because there is no longer a legitimate purpose for the Trust or the Liquidating Trustee to remain the custodian of the Records.

11.     The Records include the following documents maintained by the Debtor prior to the Effective Date:  (a) loan files and loan-related information relating to loans no longer owned by Debtor; (b) accounting files; (c) tax-related files; (d) employee records of the Debtor; and (e) files relating to the Debtor's pre-petition assets, litigation, and business transactions.  The Records also include electronic databases maintained by the Debtor relating to loan files and the Debtor's operations prior to the Effective Date.  The Records contain non-public, personal information relating to borrowers, including financial information, credit report information, credit history information, credit scores, borrower names, addresses, social security numbers, employment information, and other borrower identifying information.  The Records also include personnel records of the Debtor's former employees.[2]  The Records do not include files relating to the operations of the Trust.

---

[2] Given the sensitive nature of many of the Records, especially those files containing personal, non-public information, the Liquidating Trustee will engage a third-party to shred the Records. The cost of shredding the hard-copy Records is approximately $120,000 and the cost of securely destroying the electronic data is $80,000.

132578.01600/21936184v.4

12.     The Records are voluminous, comprising nearly 11,000 boxes[3] of hard-copy documents, the majority of which are currently housed at facilities of Iron Mountain, Inc., a third-party vendor of document storage services.  The remainder of the hard-copy documents are housed at Eagle Storage, Inc., a third party storage vendor.

13.     The Records also include over 3 terabytes of electronic data stored on the Liquidating Trust's computer servers, which are maintained by Tamarack Management And Consulting, LLC, a third-party provider of technology services.  The contents of the electronic data are duplicative of some of the hard copy records.  Specifically, the electronic data includes a substantially complete set of files related to loans that the Debtor originated and/or serviced prior to the Effective Date.  The electronic data does not include copies of loans that were "turned-down," withdrawn or rejected during the application process.  Such turned-down, withdrawn or rejected loan application files exist in hard-copy only.  On the other hand, certain electronic data does not exist in hard-copy.  Such "electronic-only" files include the Debtor's email, payroll records and other human resources information no longer needed by the Liquidating Trustee for any purpose.

**The Requests**

14.     Since the Effective Date, the Trust has continued to receive the Requests.  The Requests have typically consisted of *subpoenas duces tecum* for the production of Records in

---

[3]  The Motion stated that the hard copy documents equaled nearly 18,000 boxes of documents, however, that figure did not reflect an up to date box count.  In the spring of 2010, pursuant to this Court's *Order Granting Debtor's Motion For Order Approving The Disposal Of Certain Books, Records and Files* [Docket No. 447] (the "Disposal Order"), the Trust destroyed approximately 7,000 boxes of "Internal Records" and "Customer Records" (as such terms are defined in the Disposal Order) that were dated April 1, 2000 and earlier.  A true and correct copy of the Disposal Order is attached hereto as **Exhibit 1.**  Thus, the approximate count of Trust boxes in storage is currently 11,000.

connection with pending or future litigation to which neither the Debtor, nor the Trust, nor the Liquidating Trustee is a party, as well as third party queries for various mortgage business-related Records, including, but not limited to, assignments and satisfactions of mortgage, deeds, bills of sale, allonges and deeds of trust.

15.     As the Trust is the effective custodian of the Debtor's documents under the Plan, the Liquidating Trustee has voluntarily complied with the Requests.  As set forth above, in accordance with the Plan and the Trust Agreement, the Trust has now completed all claims reconciliation and adversary litigation.  Moreover, as set forth above, prior to the Effective Date, the Debtor completely exited the mortgage servicing and origination business and liquidated substantially all of its assets, including all residual interests in mortgages ever originated and/or serviced by the Debtor.  Accordingly, just as the Trust no longer needs to retain the Records, there is also no reason for the Liquidating Trustee to continue respond to the Requests.

**The Cost of Storing the Records**

16.     The cost of hard copy and electronic storage is approximately $16,095 per month. This monthly cost is comprised of the following approximate amounts:

      a.    Current monthly hard-copy storage and administrative costs total approximately $4,736.00, which is comprised of:

            i.    $4,256 (approximate) due to Iron Mountain each month; and

            ii.    $480 (approximate) due to Eagle Storage each month.

      b.    Current monthly electronic storage and administrative costs total approximately $10,073.00, which is comprised of:

            i.    $7,073 due to Tamarack for Hosting facility and daily monitoring of the system each month; and

ii.    $3,000 (approximate monthly average based on hourly consulting fees) due to Tamarack for ongoing support and maintenance of the technology system.

c.    Current average monthly Trust administrative costs related to hard-copy and electronic document storage equal approximately $1,100.

d.    Applicable municipal taxes of $186 per month.

17.    The fees payable to Eagle Storage are not based on any formal written agreement.

18.    The fees payable to Tamarack are based on that certain Consulting Services Agreement dated as of July 10, 2007, attached hereto as **Exhibit 2**.  The Tamarack contract is currently a month-to-month contract.

19.    The fees payable to Iron Mountain are based on five separate storage contracts, each of which are included in the attached **Exhibits 3 through 7**.  Each of the Iron Mountain contracts have one-year terms and purportedly renew automatically on the applicable termination date for additional one-year terms.  The Iron Mountain contracts are each purportedly terminable by either party upon 30 days written notice with the balance of payments for the applicable contract term purportedly due and payable upon termination.  Based on dealings with Iron Mountain, the five contracts have alleged termination dates as set forth below: [4]

---

[4] While the face of the contracts attached at Exhibits 3 through 7 state that the termination dates are June 7, 2011, June 7, 2011, October 1, 2011, April 24, 2011, and June 22, 2011, respectively, the termination dates set forth in this Declaration are based on representations made to the Trust by Iron Mountain setting forth different termination dates.  A true and correct copy of the applicable chart from Iron Mountain regarding the contract termination dates is attached hereto as **Exhibit 8**.

132578.01600/21936184v.4

| Contract Number | Alleged Expiration Date of Contract | Approximate Monthly Charge |
|---|---|---|
| C5093 | 3/31/2011 | $2,725 |
| G1629 | 3/31/2011 | $492 |
| XK450 | 3/31/2011 | $575 |
| PA453 | 4/30/2011 | $333 |
| PC628 | 6/30/2011 | $131 |
| TOTAL | | $4,256 |

20.     The annual cost to the Trust of the Iron Mountain contracts equal $51,072.  In order to prevent another year's worth of alleged Iron Mountain contract costs, the Liquidating Trustee must provide notice of termination of the contracts on or before February 28, 2011 (for the three contracts – C5093, G1629 and XK450 – set to expire on March 31, 2011), March 31, 2011 (for the one contract, PA453, set to expire on April 30, 2011) and May 31, 2011 (for the one contract, PC628, set to expire on June 30, 2011).

21.     If the Liquidating Trustee is forced to give the United States the 90 days it requests to permit the United States to determine its position with respect to the Motion, the earliest that the Liquidating Trustee could expect to be able to terminate the Tamarack and Iron Mountain contracts is May 24, 2011, resulting in at least three additional months of hard-copy and electronic storage costs equaling approximately $48,285.00.   In addition, were the Liquidating Trustee not able to provide Iron Mountain with notice of its intent to terminate the Iron Mountain contracts until May 24, 2011, the Liquidating Trustee would be able to timely terminate only one Iron Mountain contract that costs the Trust only $131 per month to maintain. The remainder of the Iron Mountain contracts would have already purportedly automatically

132578.01600/21936184v.4

renewed on or before May 24, 2011, requiring the Trust to potentially pay as much as $49,500 in termination damages to Iron Mountain.

22.     Thus, were the Court to deny the Motion as the United States requests, the monthly storage costs would continue indefinitely.  Alternatively, were the Court to permit the United States to have the additional 90 days that it seeks to ascertain its position with respect to the Motion, the Trust would be required to pay approximately $97,785.00 in otherwise unnecessary costs.

**The Cost of Responding to the Requests**

23.     Based on a conservative estimate, the professional fees expended by the Trust on a monthly basis for the purpose of responding to the Requests equal approximately $20,000. This estimate is based on an informal review of the Request-related invoices of the various professionals employed by the Liquidating Trustee, including attorneys and other professionals. Were the Court to deny the Motion as the United States requests, these costs would continue indefinitely.  Were the Court to permit the United States to have the additional 90 days it seeks to ascertain its position with respect to the Motion, the Trust would likely be required to pay approximately $60,000 in additional professional fees associated with responding to additional Requests that may come in during this time.

*[Remainder of page intentionally left blank]*

132578.01600/21936184v.4

I certify under penalty of perjury that, based on my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct to the best of my knowledge.

Dated: January 22, 2011

_William Rehm_
WILLIAM REHM
CONSULTANT TO THE MORTGAGE
LENDERS NETWORK LIQUIDATING TRUST

## **Exhibit 1**

Disposal Order

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MORTGAGE LENDERS | ) | Case No. 07-10146 (PJW) |
| NETWORK USA, INC.,[1] | ) | |
| | ) | |
| Debtor. | ) | Related Docket No. 380 |

## ORDER GRANTING DEBTORS' MOTION FOR ORDER APPROVING THE DISPOSAL OF CERTAIN BOOKS, RECORDS, AND FILES

Upon the motion (the "Motion") of the captioned debtor and debtor in possession (the "Debtor") for entry of an Order pursuant to sections 363 and 554(a) of the Bankruptcy Code and Bankruptcy Rule 6007, authorizing the Debtor to destroy certain books, records, and files that are of inconsequential value to the Debtor's estate and are not necessary for the investigation of any potential causes of action, including avoidance power causes of action under the Bankruptcy Code, and the retention of which is burdensome to the Debtor; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 158(a); and (a) the Official Committee of Unsecured Creditors (the "Committee"), (b) the State of Connecticut, and (c) Iron Mountain Information Management, Inc. ("Iron Mountain") having filed responses or provided informal comments to the Motion; and it appearing that the relief requested by the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and after due deliberation and for good cause appearing for the Motion, it is hereby

---

[1] Debtor's EIN: XX-XXX7394;
Debtor's Address: Middlesex Corporate Center, 213 Court Street, 11th Floor, Middletown, CT 06457

ORDERED that the Debtor is authorized to destroy all of the Internal Records and the Customer Records (as defined in the Motion) more than seven (7) years old or dated April 1, 2000 and earlier; and it is further

ORDERED that the Debtor is authorized to destroy the approximately fifty (50) bankers' boxes of documents containing duplicate copies of loan files (the "Duplicate Records") that the Debtor represents otherwise exist in hard copies and/or electronic copies, which hard copies and/or electronic copies the Debtor shall retain; and it is further

ORDERED that, with respect to documents located in approximately 100 bags (the "Shred Bags") that had been designated for shredding in the ordinary course of the Debtor's business, the Debtor shall: (a) do a sampling of the Shred Bags in order to confirm that the documents contained therein (i) are of the type that were historically and traditionally shredded in the ordinary course of the Debtor's business and (ii) are not pertinent to existing loan files or other business records; and (b) report the findings of such sampling to the Committee and the State of Connecticut; and it is further

ORDERED that upon receipt by the Debtor of written confirmation from the Committee and the State of Connecticut that they do not object to the destruction of records contained in the Shred Bags, the Debtor is authorized but not directed to destroy such records; and it is further

ORDERED that, with respect to the Debtor's remaining records (i) less than seven years old, (ii) not consisting of documents contained in the Duplicate Records or the Shred Bags, and (iii) not required to be retained pursuant to other applicable non-bankruptcy law (collectively, the "Remaining Records"), the Debtor is authorized to destroy such documents on a case by case basis in the future without further Court approval; provided that the Committee and the State of Connecticut (a) have the opportunity to review a list of the Remaining Records proposed for

Destruction, and (b) provide written approval to the Debtor of any proposal to destroy the Remaining Records; and it is further

ORDERED that the Debtor is authorized to make postpetition payments for the postpetition preservation and destruction, as the case may be, of its Internal Records and Customer Records, and to take all reasonable and necessary actions to effectuate the terms of this Order including the destruction or other disposition or abandonment of the Internal Records and the Customer Records as provided herein; provided however that no Internal Records or Customer Records presently stored at Iron Mountain will be abandoned at Iron Mountain; and it is further

ORDERED that the Court shall retain jurisdiction over the matters set forth herein.

Dated: _April_ / _P_2007

Honorable Peter J. Walsh
United States Bankruptcy Judge

**Exhibit 2**

Tamarack Contract

# Consulting Services Agreement

This Consulting Services Agreement (CSA) is made as of July 10, 2007 (the Effective Date), by and between Tamarack Management & Consulting LLC, a Connecticut Limited Liability Corporation, with its principal place of business located at 639 Tamarack Road, Cheshire, CT 06410 (TM&C) and all parties or entities requiring assistance on behalf of the Mortgage Lenders Network USA, Inc. (MLN) and Scouler & Company (SC) with its principal place of business located at 213 Court Street, Middletown, CT 06457.

MLN/SC will sign a CSA with TM&C for monthly computer hardware hosting, internet access, email and consulting services to ensure that systems in (Schedule A) are up and running and limited technical support provided.

Upon execution of this CSA, TM&C will invoice MLN/SC for Two (2) months of hosting support services monthly in (Schedule B) at cost, plus a fifteen percent (15%) administrative fee and a monthly sixteen (16) hour consulting time block for Three Thousand Two Hundred Dollars ($ 3,200). Payment of all invoices are due upon receipt.

The CSA term is valid for a period of One (1) year from the effective date. This contract will automatically renew to a Month-to-Month term at the then prevailing Month-to-Month rate not to exceed Twenty Five Percent (25%) of the current monthly rate, unless notified in writing by certified mail 60 days prior to expiration. If MLN/SC wishes to cancel prior to the end of the first One (1) year term or following terms, MLN/SC must notify TM&C in writing by certified mail 60 days prior to cancellation and will be required to pay the balance of the hosting contract term based on a minimum of 80% of the total One (1) year value if the CSA is canceled in or before the Ninth (9th) month of the term. In the Tenth (10th) month and after the cancellation fee is Twenty Five Percent (25%) of the remaining term payments.

Additional Services:

1. Consulting hours are billed at our standard consulting rate of Two Hundred Dollars an Hour ($200.00) rounded up to the near Fifteen (15) minute increment. Consulting services on large projects exceeding Twenty (20) hours will require written approval by both TM&C and MLN/SC in order to render requested services. At the time of approval a Fifty Percent (50%) deposit will be required and invoiced. Consulting services on projects under Twenty (20) hours will require written approval by both TM&C and MLN/SC in order to render requested services and will be invoiced in the month they occurred.
2. Requests requiring the support of a software, hardware or specialty vendor will be billed at cost plus a fifteen percent (15%) administrative fee.
3. Malfunctions, repairs or replacement of any hardware or software systems will be billed at cost plus a fifteen percent (15%) administrative fee.
4. All software licensing and vendor support agreements will be billed at cost plus a fifteen percent (15%) administrative fee.

Property:

All equipment hosted is the sole property and responsibility of MLN/SC.

Tamarack Management & Consulting LLC

Date: _____

By: _____

Print: <u>Michael S. Simeone</u>

Its: _____<u>President</u>_____

Mortgage Lender Network USA / SC

Date: _____July 11, 2007_____

By: _____Daniel Scouler_____

Print: _____DANIEL SCOULER_____

Its: _____CHIEF RESTRUCTURING OFFICER_____

## Schedule A

**Services Provided:**
Hosting of 1 computer rack (12 - 14 servers)
Hosting of 1 EMC SAN
ID and Password support for network access
ID and Password support for application software
Internet Support
Network Support
Exchange Support
Firewall Support
VMware Support
MS SQL Support
Citrix 14, 15,  27 and 29 Support
EMC SAN Support
Accountmate (G/L)
ACES - Quality Control System
Repurchase Database
Deficiency Tracking System
FAS-Fixed Asset System
Imaging
Intranet
Lead tracking
LMS
EMAIL
Main One - Report
PEAS
Rekon 2000
SMO
Uniform
Warehouse MLN
ACLS

## Schedule B

| Invoice Issue Date | Invoiced Months | Invoice Payment Due Date |
|---|---|---|
| July 9, 2007 | July / August 2007 | July 10, 2007 |
| July 31, 2007 | September / October 2007 | August 1, 2007 |
| September 30, 2007 | November / December 2007 | October 1, 2007 |
| November 30, 2007 | January 2008 / February 2008 | December 1, 2007 |
| January 31, 2008 | March / April 2008 | February 1, 2008 |
| March 31, 2008 | May / June 2008 | April 1, 2008 |

**<u>Exhibit 3</u>**

Iron Mountain Contract C5093

C5093



**IRON MOUNTAIN**

America's Largest Records Management Company

# RECORDS MANAGEMENT AND SERVICE AGREEMENT

| Customer | | | Billing Address (If Different) | | |
|---|---|---|---|---|---|
| Mortgage Lenders Network USA, Inc | | | | | |
| **Street Address** | | | Street or Box No. | | |
| Middlesex Corporate Center | | | | | |
| 213 Court Street | | | | | |
| **City** | **State** | **Zip + 4** | City | **State** | **Zip + 4** |
| Middletown | CT | 06457 | | | |
| **Primary Contact and Title** | | | Billing Contact *Cristina Alves* | | |
| Peter Gilsenan Purchasing Agent | | | | | |
| **Telephone** | **Fax** | | Telephone 860-344-5720 | Fax 860-704-6063 | |
| 860-704-6286 | 860-704-4706 | | | | |
| **Customer Number** 051124 | | | Facility | | |

Iron Mountain (the "Company") hereby agrees to accept for storage and to service under its management system at Iron Mountain facilities such records material (deposits) as Customer requests. Customer agrees to pay the Company for storage and services according to the amounts and provisions specified in Schedule A (as amended from time to time); and Customer agrees that all services shall be provided subject to the terms and conditions below and on the reverse hereof.

VALUE OF DEPOSITS. **Customer declares that the value of the deposits is $1.00 per carton, linear foot of open shelf files, container, disk pack or other deposit item. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.**

LIMITATION OF LIABILITY. **The Company's liability, if any, for loss of or damage to part or all of the deposits shall be limited to $1.00 per carton, linear foot of open shelf files, container, disk pack or other deposit item.**

| Customer Mortgage Lenders Network USA, Inc | IRON MOUNTAIN |
|---|---|
| Name Michael S. Simeone | Name DAVIS H. JELLY |
| Signature Michael S. Simeone | Signature Davis H. Jelly |
| Title Senior Vice President | Title General Manager |
| Date June 8, 1999 | Date June 16, 1999 |

CONTRACT EFFECTIVE DATE June 1, 1999



**PRISM**
INTERNATIONAL

WHITE - IRON MOUNTAIN CORPORATE   CANARY - CUSTOMER COPY   PINK - IRON MOUNTAIN DISTRICT

Professional Records & Information Services Management
formerly ACRC

# IRON MOUNTAIN STANDARD TERMS AND CONDITIONS

(Based upon Terms and Conditions Approved and Promulgated by the Association of Commercial Records Centers, Inc., March 1986)

The following terms and conditions shall apply to this Agreement.

1. Storage and Service Charges–All charges for storage and service under this Agreement shall be as specified in Schedule A, attached hereto. Such charges shall remain fixed for the term of this Agreement (excluding renewals) unless otherwise provided in Schedule A.

2. Term–The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on Schedule A. Unless otherwise provided in Schedule A, the term will continue for one year, with automatic renewals for additional successive one-year terms, unless written notice of non-renewal is delivered by either party to the other not less than thirty days prior to the expiration date. During the term Customer will store with the Company not less than 80% of the initial transfer balance of the stored materials, net of destructions undertaken in the normal course of business.

3. Access; Procedures; Force Majeure

A. Deposited material and information contained in said material may be delivered pursuant to direction of Customer's agent(s) identified in the company's standard authorization forms. Authority granted to any person on the Company's standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service for or removal of Customer's material, and to deliver and receive such material. Such orders may be given in person, by telephone or in writing.

B. Customer shall comply with the company's reasonable operational requirements, as modified from time to time, regarding containers, delivery volumes, security, access and similar matters. Customer acknowledges that extraordinary volume or service request including permanent removals, may require the Company to incur additional costs, which Customer will pay at the Company's overtime rates, provided that the Company shall have advised the Customer in advance.

C. The Company shall not be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, unusual traffic delays or other causes beyond its control.

D. The Company may comply with any subpoena or similar order related to the stored materials, provided that the Company notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. Customer shall pay Company's service charges for such compliance.

4. Liability & Limitation of Damages

A. The Company shall not be liable for any loss of or damage to stored material, however caused, unless such loss or damage resulted from the failure by the Company to exercise such care in regard thereto as a reasonably careful person would exercise under like circumstances; the Company is not liable for loss or damage which could not have been avoided by the exercise of such care. If liable the amount of the Company's damage is limited, as provided on front page.

B. Deposited materials are not insured by the Company against loss or damage, however caused. Customer may insure deposits through third-party insurers for any amount, including amounts in excess of the limitation of liability. Customer shall cause its insurers of stored materials to waive any right of subrogation against the Company.

C. In no event shall the Company be liable for any consequential or incidental damages.

5. Notice of Claim and Filing of Suit

A. Claims by Customer must be presented in writing to the Company within a reasonable time, and in no event longer than 60 days after delivery or return of the stored material to Customer or 60 days after Customer is notified by the Company that loss, damage or destruction to part or all of the stored material has occurred, whichever time is shorter.

B. No action may be maintained by Customer or others against the Company for loss, damage or destruction of stored material, unless timely written claim has been given as provided in Paragraph (A) of this section, and unless such action is commenced either within nine months after (i) the date of delivery or return by the Company or (ii) the date Customer is notified that loss, damage or destruction to part or all of stored material has occurred, whichever time is shorter.

C. When stored material has been lost, damaged or destroyed and has not been delivered or returned to Customer, notice thereof may be given by mailing a certified letter to Customer. In the event notice of loss, damage or destruction is given by certified letter, the time limitation for presentation of a claim and commencement of action or suit begins on the date of mailing of such notice by the Company.

6. Payment–If Customer fails to pay the charges of the Company for a period of thirty days, the Company may, after giving ten days' notice by certified mail, at its option (a) redeliver the stored material to Customer at its address herein, or (b) refuse access to stored material. Customer shall be liable for the late charges at the rate of 15% per annum, compounded monthly, and all expenses incurred in collecting charges which are in arrears, including reasonable attorneys' fees. The Company may at any time require payment by certified check prior to delivery of stored materials. The Company shall have, and may exercise, all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the deposits are stored, and the Company shall have such other rights and remedies as may be provided by law. If Customer is in arrears on fees for a period of six months or longer, the Company may destroy the deposited materials ten days after written notice addressed to Customer's most recent address in the Company's records. In the event the Company takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer. Nothing herein shall preclude the Company from pursuing other remedies authorized by statute or otherwise.

7. Destruction of Records– Customer releases the Company from all Liability by reason of the destruction of stored material pursuant to Customer's direction.

8. Notices–Any notice made pursuant to this Agreement may be given or made in writing at the addresses set out on the front side hereof until written notice of a change of address has been received.

9. Ownership Warranty– Customer warrants that it is the owner or legal custodian of the stored material and has full authority to store said material and direct its disposition in accordance with the terms of this Agreement.

10. Indemnification– Customer agrees to fully indemnify and hold harmless the Company and its employees and agents for any liability, cost or expense (including litigation expenses and reasonable attorneys' fees) arising out of the Company's possession of Customer's stored materials, Customer's breach of any terms or provisions of this Agreement, or the Company's relations with Customer or third parties pursuant to this Agreement, unless caused solely by the negligence or willful misconduct of the Company

11. No Hazardous Substances or Conditions– Customer shall not, at any time, store with the Company material considered to be highly flammable, explosive, toxic or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. All Customers premises where the Company's employees perform services or make deliveries hereunder shall be free of all hazardous substances and any other hazardous or dangerous conditions.

12. Modification; Assignment–This Agreement binds the heirs, executors, successors and assigns of the respective parties and cannot be changed orally. This Agreement may not be assigned by Customer (other than to an affiliate which shall assume the obligations of its assignor by written instrument) without the written consent of the other, which shall not be unreasonably withheld or delayed.

13. Definitions

A. Reference to the Company shall mean Iron Mountain Records Management, Inc. or Company identified on schedule A.

B. Reference to "stored deposits" or "deposited material" shall include all documents, records or other material stored by the Company for Customer. All such deposited material delivered by Customer to the Company for storage during the term of this Agreement shall be subject to the terms and conditions hereof.

Copyright© 1998 Iron Mountain
Revised 4/98

**<u>Exhibit 4</u>**

Iron Mountain Contract G1629

### AFFILIATE ASSIGNMENT
### TO
### RECORDS MANAGEMENT AND SERVICE AGREEMENT

Family CREDIT COLLECTION a

Division of Mortgage Lenders *Agrees to store records at Iron Records Management, Inc. under the established contract with account number*  C5093 .

**CHOOSE ONE OF THE FOLLOWING OPTIONS:**

☑ *Iron Mountain shall provide, and Depositor agrees to accept, the same rates, services and terms/conditions as outlined in the existing agreement.*

☐ *Iron Mountain shall provide, and Depositor agrees to accept, the same terms and conditions as outlined in the existing agreement. Storage and services will be performed by Iron Mountain in accordance with the rates listed in Schedule A dated _____ attached to this agreement. To the extent that this Schedule A conflicts with any other document, the terms and conditions of this Schedule A shall prevail. The storage rate is _____ /CF.*

*New Account's Company Name and Address:*
Family Credit Connection a

Div of Mortgage Lenders NHWK
1750 East Golf Road S-350
Schaumburg, IL 60123

*IRON MOUNTAIN RECORDS MGMT., INC.*
*1000 CAMPUS DRIVE*
*COLLEGEVILLE, PA 19426*

91629
_____
*IMRM Number Assigned to Depositor*

_____ 1/2/02
**Depositor Signature & Date**

Michael Collins
_____
**Depositor Printed Name & Title**
Managing Director

_____ 5-21-02
*IMRM Signature*  Date
MICHAEL L. ANDERSON
DIRECTOR OF ADMINISTRATION

*IMRM Printed Name & Title*



C5093

## IRON MOUNTAIN
America's Largest Records Management Company

# RECORDS MANAGEMENT AND SERVICE AGREEMENT

| Customer | | | Billing Address (If Different) | | |
|---|---|---|---|---|---|
| Mortgage Lenders Network USA, Inc | | | | | |
| Street Address | | | Street or Box No. | | |
| Middlesex Corporate Center | | | | | |
| 213 Court Street | | | | | |

| City | State | Zip + 4 | City | State | Zip + 4 |
|---|---|---|---|---|---|
| Middletown | CT | 06457 | | | |

| Primary Contact and Title | | | Billing Contact | | |
|---|---|---|---|---|---|
| Peter Gilsenan, Purchasing Agent | | | Cristina A Lres | | |

| Telephone | Fax | Telephone | Fax |
|---|---|---|---|
| 860-704-6286 | 860-704-4706 | 860-344-5720 | 860-704-6063 |

| Customer Number | Facility |
|---|---|
| 051124 | |

Iron Mountain (the "Company") hereby agrees to accept for storage and to service under its management system at Iron Mountain facilities such records material (deposits) as Customer requests. Customer agrees to pay the Company for storage and services according to the amounts and provisions specified in Schedule A (as amended from time to time); and Customer agrees that all services shall be provided subject to the terms and conditions below and on the reverse hereof.

**VALUE OF DEPOSITS.** Customer declares that the value of the deposits is $1.00 per carton, linear foot of open shelf files, container, disk pack or other deposit item. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.

**LIMITATION OF LIABILITY.** The Company's liability, if any, for loss of or damage to part or all of the deposits shall be limited to $1.00 per carton, linear foot of open shelf files, container, disk pack or other deposit item.

| | |
|---|---|
| Customer Mortgage Lenders Network USA, Inc | IRON MOUNTAIN |
| Name Michael S. Simeone | Name DAVIS H. JELLY |
| Signature Michael S. Simeone | Signature Davis H. Jelly |
| Title Senior Vice President | Title General Manager |
| Date June 8, 1999 | Date June 16, 1999 |

CONTRACT EFFECTIVE DATE June 1, 1999



≡ PRISM
INTERNATIONAL
Professional Records & Information Services Management
formerly ACRC

WHITE - IRON MOUNTAIN CORPORATE     CANARY - CUSTOMER COPY     PINK - IRON MOUNTAIN DISTRICT

# IRON MOUNTAIN STANDARD TERMS AND CONDITIONS

(Based upon Terms and Conditions Approved and Promulgated by the Association of Commercial Records Centers, Inc., March 1986)

The following terms and conditions shall apply to this Agreement.

1. **Storage and Service Charges**–All charges for storage and service under this Agreement shall be as specified in Schedule A, attached hereto. Such charges shall remain fixed for the term of this Agreement (excluding renewals) unless otherwise provided in Schedule A.

2. **Term**–The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on Schedule A. Unless otherwise provided in Schedule A, the term will continue for one year, with automatic renewals for additional successive one-year terms, unless written notice of non-renewal is delivered by either party to the other not less than thirty days prior to the expiration date. During the term Customer will store with the Company not less than 80% of the initial transfer balance of the stored materials, net of destructions undertaken in the normal course of business.

3. **Access; Procedures; Force Majeure**

   A. Deposited material and information contained in said material may be delivered pursuant to direction of Customer's agent(s) identified in the company's standard authorization forms. Authority granted to any person on the Company's standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service for or removal of Customer's material, and to deliver and receive such material. Such orders may be given in person, by telephone or in writing.

   B. Customer shall comply with the company's reasonable operational requirements, as modified from time to time, regarding containers, delivery volumes, security, access and similar matters. Customer acknowledges that extraordinary volume or service request including permanent removals, may require the Company to incur additional costs, which Customer will pay at the Company's overtime rates, provided that the Company shall have advised the Customer in advance.

   C. The Company shall not be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, unusual traffic delays or other causes beyond its control

   D. The Company may comply with any subpoena or similar order related to the stored materials, provided that the Company notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. Customer shall pay Company's service charges for such compliance.

4. **Liability & Limitation of Damages**

   A. The Company shall not be liable for any loss of or damage to stored material, however caused, unless such loss or damage resulted from the failure by the Company to exercise such care in regard thereto as a reasonably careful person would exercise under like circumstances; the Company is not liable for loss or damage which could not have been avoided by the exercise of such care. If liable the amount of the Company's damages is limited, as provided on front page.

   B. Deposited materials are not insured by the Company against loss or damage, however caused. Customer may insure deposits through third-party insurers for any amount, including amounts in excess of the limitation of liability. Customer shall cause its insurers of stored materials to waive any right of subrogation against the Company.

   C. In no event shall the Company be liable for any consequential or incidental damages.

5. **Notice of Claim and Filing of Suit**

   A. Claims by Customer must be presented in writing to the Company within a reasonable time, and in no event longer than 60 days after delivery or return of the stored material to Customer or 60 days after Customer is notified by the Company that loss, damage or destruction to part or all of the stored material has occurred, whichever time is shorter.

   B. No action may be maintained by Customer or others against the Company for loss, damage or destruction of stored material, unless timely written claim has been given as provided in Paragraph (A) of this section, and unless such action is commenced either within nine months after (i) the date of delivery or return by the Company or (ii) the date Customer is notified that loss, damage or destruction to part or all of stored material has occurred, whichever time is shorter.

   C. When stored material has been lost, damaged or destroyed and has not been delivered or returned to Customer, notice thereof may be given by mailing a certified letter to Customer. In the event notice of loss, damage or destruction is given by certified letter, the time limitation for presentation of a claim and commencement of action or suit begins on the date of mailing of such notice by the Company.

6. **Payment**–If Customer fails to pay the charges of the Company for a period of thirty days, the Company may, after giving ten days' notice by certified mail, at its option (a) redeliver the stored material to Customer at its address herein, or (b) refuse access to stored material. Customer shall be liable for the late charges at the rate of 15% per annum, compounded monthly, and all expenses incurred in collecting charges which are in arrears, including reasonable attorneys' fees. The Company may at any time require payment by certified check prior to delivery of stored materials. The Company shall have, and may exercise, all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the deposits are stored, and the Company shall have such other rights and remedies as may be provided by law. If Customer is in arrears on fees for a period of six months or longer, the Company may destroy the deposited materials ten days after written notice addressed to Customer's most recent address in the Company's records. In the event the Company takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer. Nothing herein shall preclude the Company from pursuing other remedies authorized by statute or otherwise.

7. **Destruction of Records**–Customer releases the Company from all Liability by reason of the destruction of stored material pursuant to Customer's direction.

8. **Notices**–Any notice made pursuant to this Agreement may be given or made in writing at the addresses set out on the front side hereof until written notice of a change of address has been received.

9. **Ownership Warranty**–Customer warrants that it is the owner or legal custodian of the stored material and has full authority to store said material and direct its disposition in accordance with the terms of this Agreement.

10. **Indemnification**–Customer agrees to fully indemnify and hold harmless the Company and its employees and agents for any liability, cost or expense (including litigation expenses and reasonable attorneys' fees) arising out of the Company's possession of Customer's stored materials. Customer's breach of any terms or provisions of this Agreement, or the Company's relations with Customer or third parties pursuant to this Agreement, unless caused solely by the negligence or willful misconduct of the Company

11. **No Hazardous Substances or Conditions**– Customer shall not, at any time, store with the Company material considered to be highly flammable, explosive, toxic or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. All Customers premises where the Company's employee perform services or make deliveries hereunder shall be free of all hazardous substances and any other hazardous or dangerous conditions.

12. **Modification; Assignment**–This Agreement binds the heirs, executors, successors and assigns of the respective parties and cannot be changed orally. This Agreement may not be assigned by Customer (other than to an affiliate which shall assume the obligations of its assignor by written instrument) without the written consent of the other, which shall not be unreasonably withheld or delayed.

13. **Definitions**

   A. Reference to the Company shall mean Iron Mountain Records Management, Inc. or Company identified on schedule A.

   B. Reference to "stored deposits" or "deposited material" shall include all documents, records or other material stored by the Company for Customer. All such deposited material delivered by Customer to the Company for storage during the term of this Agreement shall be subject to the terms and conditions hereof.

Copyright© 1998 Iron Mountain
Revised 4/98

## **Exhibit 5**

Iron Mountain Contract XK450



# IRON MOUNTAIN

America's Largest Records Management Company



XK450

RECEIVED

OCT 26 1998

CORATE HEADQUARTERS
DEPARTMENT

# RECORDS MANAGEMENT AND SERVICE AGREEMENT

| Customer | | | Billing Address (If Different) | | |
|---|---|---|---|---|---|
| Mortgage Lenders Network | | | | | |
| **Street Address** | | | Street or Box No. | | |
| 400 N. Parklake Town Center | | | | | |
| | | | | | |
| **City** | State | Zip + 4 | City | State | Zip + 4 |
| Atlanta | GA | 30328 | | | |
| **Primary Contact and Title** | | | Billing Contact | | |
| Richard Rappa – General Manager | | | | | |
| **Telephone** | Fax | | Telephone | Fax | |
| (770) 604-9750 | | | | | |
| **Customer Number** | | | Facility | | |
| 102942 | | | 309-Atlanta | | |

Iron Mountain (the "Company") hereby agrees to accept for storage and to service under its management system at Iron Mountain facilities such records material (deposits) as Customer requests. Customer agrees to pay the Company for storage and services according to the amounts and provisions specified in Schedule A (as amended from time to time); and Customer agrees that all services shall be provided subject to the terms and conditions below and on the reverse hereof.

**VALUE OF DEPOSITS. Customer declares that the value of the deposits is $1.00 per carton, linear foot of open shelf files, container, disk pack or other deposit item. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.**

**LIMITATION OF LIABILITY. The Company's liability, if any, for loss of or damage to part or all of the deposits shall be limited to $1.00 per carton, linear foot of open shelf files, container, disk pack or other deposit item.**

| Customer | Richard Rappa | IRON MOUNTAIN | |
|---|---|---|---|
| Name | Richard W Rappa Jr | Name | Arch Haer |
| Signature | *[signature]* | Signature | *[signature]* |
| Title | Operations Manager | Title | General Manager |
| Date | 10/2/98 | Date | 10-12-98 |

CONTRACT EFFECTIVE DATE ___10-1-98___



PRISM
INTERNATIONAL

Professional Records & Information Services Management
Formerly ACRC

# IRON MOUNTAIN STANDARD TERMS AND CONDITIONS

(Based upon Terms and Conditions Approved and Promulgated by the Association of Commercial Records Centers, Inc., March 1986)

The following terms and conditions shall apply to this Agreement.

1. **Storage and Service Charges**–All charges for storage and service under this Agreement shall be as specified in Schedule A, attached hereto. Such charges shall remain fixed for the term of this Agreement (excluding renewals) unless otherwise provided in Schedule A.

2. **Term**–The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on Schedule A. Unless otherwise provided in Schedule A, the term will continue for one year, with automatic renewals for additional successive one-year terms, unless written notice of non-renewal is delivered by either party to the other not less than thirty days prior to the expiration date. During the term Customer will store with the Company not less than 80% of the initial transfer balance of the stored materials, net of destructions undertaken in the normal course of business.

3. **Access; Procedures; Force Majeure**

A. Deposited material and information contained in said material may be delivered pursuant to direction of Customer's agent(s) identified in the company's standard authorization forms. Authority granted to any person on the Company's standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service for or removal of Customer's material, and to deliver and receive such material. Such orders may be given in person, by telephone or in writing.

B. Customer shall comply with the company's reasonable operational requirements, as modified from time to time, regarding containers, delivery volumes, security, access and similar matters. Customer acknowledges that extraordinary volume or service request including permanent removals, may require the Company to incur additional costs, which Customer will pay at the Company's overtime rates, provided that the Company shall have advised the Customer in advance.

C. The Company shall not be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, unusual traffic delays or other causes beyond its control.

D. The Company may comply with any subpoena or similar order related to the stored materials, provided that the Company notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. Customer shall pay Company's service charges for such compliance.

4. **Liability & Limitation of Damages**

A. The Company shall not be liable for any loss of or damage to stored material, however caused, unless such loss or damage resulted from the failure by the Company to exercise such care in regard thereto as a reasonably careful person would exercise under like circumstances; the Company is not liable for loss or damage which could not have been avoided by the exercise of such care. If liable the amount of the Company's damages is limited, as provided on front page.

B. Deposited materials are not insured by the Company against loss or damage, however caused. Customer may insure deposits through third-party insurers for any amount, including amounts in excess of the limitation of liability. Customer shall cause its insurers of stored materials to waive any right of subrogation against the Company.

C. In no event shall the Company be liable for any consequential or incidental damages.

5. **Notice of Claim and Filing of Suit**

A. Claims by Customer must be presented in writing to the Company within a reasonable time, and in no event longer than 60 days after delivery or return of the stored material to Customer or 60 days after Customer is notified by the Company that loss, damage or destruction to part or all of the stored material has occurred, whichever time is shorter.

B. No action may be maintained by Customer or others against the Company for loss, damage or destruction of stored material, unless timely written claim has been given as provided in Paragraph (A) of this section, and unless such action is commenced either within nine months after (i) the date of delivery or return by the Company or (ii) the date Customer is notified that loss, damage or destruction to part or all of stored material has occurred, whichever time is shorter.

C. When stored material has been lost, damaged or destroyed and has not been delivered or returned to Customer, notice thereof may be given by mailing a certified letter to Customer. In the event notice of loss, damage or destruction is given by certified letter, the time limitation for presentation of a claim and commencement of action or suit begins on the date of mailing of such notice by the Company.

6. **Payment**–If Customer fails to pay the charges of the Company for a period of thirty days, the Company may, after giving ten days' notice by certified mail, at its option (a) redeliver the stored material to Customer at its address herein, or (b) refuse access to stored material. Customer shall be liable for the late charges at the rate of 15% per annum, compounded monthly, and all expenses incurred in collecting charges which are in arrears, including reasonable attorneys' fees. The Company may at any time require payment by certified check prior to delivery of stored materials. The Company shall have, and may exercise, all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the deposits are stored, and the Company shall have such other rights and remedies as may be provided by law. If Customer is in arrears on fees for a period of six months or longer, the Company may destroy the deposited materials ten days after written notice addressed to Customer's most recent address in the Company's records. In the event the Company takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer. Nothing herein shall preclude the Company from pursuing other remedies authorized by statute or otherwise.

7. **Destruction of Records**– Customer releases the Company from all Liability by reason of the destruction of stored material pursuant to Customer's direction.

8. **Notices**–Any notice made pursuant to this Agreement may be given or made in writing at the addresses set out on the front side hereof until written notice of a change of address has been received.

9. **Ownership Warranty**– Customer warrants that it is the owner or legal custodian of the stored material and has full authority to store said material and direct its disposition in accordance with the terms of this Agreement.

10. **Indemnification**– Customer agrees to fully indemnify and hold harmless the Company and its employees and agents for any liability, cost or expense (including litigation expenses and reasonable attorneys' fees) arising out of the Company's possession of Customer's stored materials, Customer's breach of any terms or provisions of this Agreement, or the Company's relations with Customer or third parties pursuant to this Agreement, unless caused solely by the negligence or willful misconduct of the Company.

11. **No Hazardous Substances or Conditions**– Customer shall not, at any time, store with the Company material considered to be highly flammable, explosive, toxic or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. All Customers premises where the Company's employees perform services or make deliveries hereunder shall be free of all hazardous substances and any other hazardous or dangerous conditions.

12. **Modification; Assignment**–This Agreement binds the heirs, executors, successors and assigns of the respective parties and cannot be changed orally. This Agreement may not be assigned by Customer (other than to an affiliate which shall assume the obligations of its assignor by written instrument) without the written consent of the other, which shall not be unreasonably withheld or delayed.

13. **Definitions**

A. Reference to the Company shall mean Iron Mountain Records Management, Inc. or Company identified on schedule A.

B. Reference to "stored deposits" or "deposited material" shall include all documents, records or other material stored by the Company for Customer. All such deposited material delivered by Customer to the Company for storage during the term of this Agreement shall be subject to the terms and conditions hereof.

Copyright© 1998 Iron Mountain
Revised 4/98

**<u>Exhibit 6</u>**

Iron Mountain Contract PA453

# ▲ IRON MOUNTAIN™
The Leader in Records & Information Management

## CUSTOMER AGREEMENT

| IRON MOUNTAIN INFORMATION MANAGEMENT, INC. (check one): | CONFIDENTIAL DESTRUCTION: |
|---|---|
| ☐ Iron Mountain Records Management Division  ☐ Iron Mountain Off-Site Data Protection Division  ☐ Iron Mountain/National Underground Storage Division | ☒ Iron Mountain Confidential Destruction LLC |

**Address of Iron Mountain Branch/District Office:**
3433 PROGRESS DRIVE
BENSALEM, PA 19020

**Contract Effective Date:** 4-25-03

| FOR IRON MOUNTAIN PURPOSES ONLY | |
|---|---|
| **Account Number:** PA453 | **SIC Code:** |
| **Branch/District Cost Ctr. No.:** 02211 | |

| CUSTOMER: MORTGAGE LENDERS NETWORK USA, INC. | BILLING ADDRESS (If Different): SAME |
|---|---|
| **Street Address:** 132 WELSH ROAD, SUITE 110 | **Street or Box No.:** |
| **City:** HORSHAM  **State:** PA  **Zip + 4:** 19044 | **City:**  **State:**  **Zip + 4:** |
| **Primary Contact and Title:** Ed SCHNEIDER, OPERATIONS MANAGER | **Billing Contact:** |
| **Telephone:** e-mail: 215 659 5500 x207  **Fax:** 215 659 3201 | **Telephone:** e-mail:  **Fax:** |

The Iron Mountain operating unit or affiliate checked above, as the contracting entity ("Iron Mountain"), will perform the services described on schedules annexed to this Agreement either physically or by reference (each a "Schedule"), and Customer will pay Iron Mountain for such services according to the rates and provisions in the Schedules. All services will be provided subject to the terms and conditions below and on the reverse hereof and in any Schedule.

**VALUE OF DEPOSITS.** Customer declares, for the purposes of this Agreement, that (a) with respect to hard-copy records, microfilm and microfiche stored pursuant to this Agreement, the value of such stored items is $1.00 per carton, linear foot of open-shelf files, container or other hard-copy storage unit, and (b) with respect to round reel tape, audio tape, video tape, film, data cartridges or data cassettes or other non-paper media stored pursuant to this Agreement, the value of such stored items is limited to the cost of replacing the physical media. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.

**LIMITATION OF LIABILITY.** Iron Mountain's liability, if any, for loss or destruction of or damage to materials stored with Iron Mountain ("Deposits") is limited to the value of each Deposit as described above, or as otherwise set forth on the reverse side hereof. Iron Mountain reserves the right to provide replacement of media for which liability is limited to replacement cost rather than payment of replacement cost. Iron Mountain's maximum liability with respect to services not related to storage is the amount paid by Customer for a discrete project or, if the loss is related to service of an ongoing and continuing nature, six months of fees paid by Customer for such service. Other limitations on Iron Mountain's liability are set forth on the reverse side of this Agreement.

| CUSTOMER: MLN USA, INC. | IRON MOUNTAIN |
|---|---|
| **Individual Signing:** [print name] Edward J SCHNEIDER | **Individual Signing:** [print name] James Foley |
| **Signature:** E Schneider | **Signature:** |
| **Title:** OPS Mgr. | **Title:** RVP |
| **Signing Date:** 4-25-03 | **Signing Date:** 4/28/03 |

WHITE – IRON MOUNTAIN CORPORATE     CANARY – CUSTOMER     PINK – IRON MOUNTAIN DISTRICT

IM-35  3/02  © 2002 Iron Mountain Incorporated

## STANDARD TERMS AND CONDITIONS

### (Based on terms and conditions promulgated by Professional Records & Information Services Management, Inc.)

The following terms and conditions shall apply to this Agreement.

1. **Term.** The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on the front side of this Agreement. The initial term of this Agreement shall continue for one (1) year after commencement, unless otherwise set forth in a Schedule. Unless otherwise provided in a Schedule, upon expiration of the initial term, the term will continue with automatic renewals for additional one (1) year terms, unless written notice of non-renewal is delivered by either party to the other not less than thirty (30) days prior to the expiration date. In the event that Iron Mountain continues to hold Deposits after the expiration or termination of this Agreement, the terms of this Agreement shall continue to apply until all of Customer's Deposits have been removed from Iron Mountain's facility, except that Iron Mountain may adjust rates upon thirty (30) days' notice.

2. **Charges.** Rates and charges shall be as specified in Schedules. Unless otherwise provided in a Schedule: (i) rates for storage shall remain fixed for the first year of this Agreement, and may thereafter be changed at any time upon thirty (30) days' written notice, and (ii) rates for services may be adjusted by Iron Mountain at any time.

3. **Principal Records Services Provider.** The charges for records management and storage set forth in the Schedules are predicated upon the expectation that Customer will utilize Iron Mountain as its primary commercial provider of records service and storage (for paper and/or magnetic media, as applicable) for Customer's locations identified on the Schedules, including accretion in records, during the term of this Agreement. In the event that Customer does not so utilize Iron Mountain's services, Iron Mountain reserves the right to adjust rates and charges to the standard list rates and charges then applicable to the services provided by Iron Mountain to Customer.

4. **Authorization; Customer Instructions.** Deposits may be delivered pursuant to direction of Customer's agent(s) identified pursuant to Iron Mountain's standards. Authority granted to any persons on standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service for, or disposal or removal of, Customer's Deposits. Such orders may be given in person, by telephone or in writing (fax, electronically or hard-copy).

5. **Operational Procedures.** Customer shall comply with Iron Mountain's reasonable operational requirements, as modified from time to time, regarding containers, delivery/pick-up volumes, security, access and similar matters. Customer acknowledges that volume requests that exceed one hundred twenty-five percent (125%) of normal volume may require Iron Mountain to incur additional costs, which Customer will pay at Iron Mountain's overtime rates, provided that Iron Mountain shall have advised Customer thereof in advance.

6. **Force Majeure.** Iron Mountain shall not be liable for delay or inability to perform caused by acts of God; governmental actions; labor unrest; acts of terrorism, riots, unusual traffic delays or other causes beyond its control.

7. **Governmental Orders.** Iron Mountain is authorized to comply with any subpoena or similar order related to the Deposits, provided that Iron Mountain notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. Customer shall pay Iron Mountain's reasonable charges for such compliance. Iron Mountain will cooperate with Customer's efforts to quash or limit any subpoena, at Customer's expense.

8. **Confidentiality.** "Confidential Information" means any information concerning or relating to the property, business and affairs of Customer that is furnished to Iron Mountain, except for information that was previously known to Iron Mountain free of any obligation to keep it confidential, is subsequently made public by Customer or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be held in confidence by Iron Mountain and shall be used only in the manner contemplated by this Agreement. Iron Mountain shall use the same degree of care to safeguard Confidential Information as it utilizes to safeguard its own confidential information.

9. **Liability In Event of Loss of Stored Material.** Iron Mountain shall not be liable for any loss or destruction of, or damage to, Deposits, however caused, unless such loss or damage resulted from the failure by Iron Mountain to exercise such care as a reasonably careful person would exercise under like circumstances; Iron Mountain is not liable for loss or damage which could not have been avoided by the exercise of such care. If liable, the amount of Iron Mountain's damages is limited as provided on the front page hereof. Deposits are not insured by Iron Mountain against loss or damage, however caused. Customer may insure Deposits through third-party insurers for any amount, including amounts in excess of the limitation of liability. Customer shall cause its insurers of Deposits to waive any right of subrogation against Iron Mountain. If Deposits are placed in the custody of a common carrier for transportation, the common carrier shall be solely responsible for any loss or destruction of, or damage to, such Deposits while in the custody of the common carrier.

10. **No Product Warranty.** Iron Mountain hereby assigns to Customer any manufacturers' warranties applicable to any products sold by Iron Mountain pursuant to this Agreement. Iron Mountain provides no warranties related to products sold. WITH RESPECT TO PRODUCTS SOLD BY IRON MOUNTAIN TO CUSTOMER, IRON MOUNTAIN MAKES NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

11. **Liability with Respect to Non-Storage Services.** With respect to services not related to storage of Deposits, Iron Mountain's maximum liability for any loss or default shall be: (i) if such loss or default relates to a discrete project, the total fees paid by Customer to Iron Mountain for such project; or (ii) if such loss or default arises from services that are of an ongoing and continuing nature, the total amount of fees paid by Customer to Iron Mountain for the performance of such services during the immediately preceding six-month period.

12. **Liability with Respect to Confidential Destruction (by Iron Mountain Confidential Destruction, LLC).** Iron Mountain shall not be responsible or liable in any manner whatsoever for the release or loss of any materials deposited in bins or otherwise delivered to it for destruction unless the release or loss is due to Iron Mountain's negligence or willful misconduct. Iron Mountain's maximum liability for any and all claims arising with respect to confidential destruction service shall not exceed the aggregate amount paid by Customer with respect to Iron Mountain Confidential Destruction services provided during the six (6) months preceding the event which gives rise to the claim.

13. **No Consequential Damages, etc.** In no event shall Iron Mountain be liable for any consequential, incidental, special or punitive damages, regardless of whether an action is brought in tort, contract or any other theory.

14. **Notice of Claims.** Claims by Customer must be presented in writing within a reasonable time, and in no event longer than ninety (90) days after delivery or return of the Deposits to Customer or ninety (90) days after Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.

15. **Filing of Actions.** No action may be maintained against Iron Mountain for loss, damage or destruction of Deposits, unless timely written claim has been given as provided in Section 14, and unless such action is commenced either within one (1) year after: (i) the date of delivery or return of the Deposits by Iron Mountain, or (ii) the date Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.

16. **Notice of Loss.** When Deposits have been lost, damaged or destroyed, notice thereof may be given by mailing a certified letter (return receipt requested) to Customer. In the event notice of loss, damage or destruction is given by certified letter, the time limitation for presentation of a claim and commencement of action or suit begins on the date of Customer's receipt of such notice.

17. **Payment. Payment terms are net, thirty (30) days.** If Customer fails to pay Iron Mountain's charges (other than disputed charges) within forty-five (45) days after the date of an invoice, Iron Mountain may, at its option: (a) refuse access to Deposits, (b) suspend service, (c) redeliver Deposits to Customer or (d) terminate this Agreement. Customer shall be liable for late charges at the rate of fifteen percent (15%) per annum, compounded monthly, on unpaid balances and all expenses incurred in collection, including reasonable attorneys' fees. If Customer is consistently delinquent (defined as being late in the payment of any three (3) or more undisputed invoices in a 12-month period) and/or upon the expiration or termination of this Agreement, Iron Mountain may require payment by certified check prior to performance of services, including delivery of Deposits. Upon default by Customer, Iron Mountain shall have other rights and remedies as may be provided by law. In the event Iron Mountain takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer.

18. **Ownership Warranty.** Customer warrants that it is the owner or legal custodian of the Deposits and has full authority to store the Deposits and direct their disposition in accordance with the terms of this Agreement. Customer shall reimburse Iron Mountain for any expenses reasonably incurred by Iron Mountain (including reasonable legal fees) by reason of Iron Mountain's compliance with the instructions of Customer in the event of a dispute concerning the ownership, custody or disposition of Deposits stored by Customer with Iron Mountain.

19. **Restrictions on Stored Material; Customer Premises.** Customer shall not store with Iron Mountain any material that is highly flammable, explosive, toxic or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. Customer shall not store negotiable instruments, jewelry, check stock or other items that have intrinsic value. All Customer's premises where Iron Mountain's employees perform services or make deliveries hereunder shall be free of hazardous substances and any other hazardous or dangerous conditions.

20. **Software License.** If access to or use of Iron Mountain inventory management software and computer programs (the "Software") is provided hereunder (as set forth in a Schedule), Iron Mountain hereby grants Customer a limited, nonexclusive license to use the Software solely in conjunction with records storage services provided by Iron Mountain during the term of this Agreement. Customer acknowledges that all Software and the inventory management system comprised of the Software belong to Iron Mountain. During the term of this Agreement, Iron Mountain shall have the exclusive right to use Deposit inventory information to provide records management services to Customer; upon expiration of this Agreement, Iron Mountain shall have the right to maintain inventory information for record-keeping purposes.

21. **Modifications to Add Customer Locations, Services.** In the event that Customer locations or lines of service are added to or deleted from this Agreement, the term of this Agreement shall not change unless the parties so agree. Pricing adjustments for all Customer's locations and/or services under this Agreement may be made on dates pricing adjustments are permitted under Section 2, regardless of the dates when new locations or services are added. Any modification of Customer locations serviced or lines of services provided will be effected by an amendment of this Agreement or a Schedule.

22. **Performance of Services by Other Operating Units.** Certain lines of service may be performed by another operating unit of Iron Mountain Incorporated, Inc. or by an affiliated company other than the operating unit or affiliate identified at the head of this Agreement. In such event, such other operating unit or affiliate will perform such service as a subcontractor to Iron Mountain. The subcontracting entity may invoice Customer directly, but Iron Mountain will remain liable for all services performed for Customer.

23. **Miscellaneous.** This Agreement binds the successors and assigns of the respective parties and cannot be changed orally. This Agreement may not be assigned by the Customer (other than to an affiliate which shall assume the obligations of its assignor by written instrument) without the written consent of Iron Mountain, which shall not be unreasonably withheld or delayed. Any notice made pursuant to this Agreement may be given in writing at the addresses set out on the front side hereof until written notice of a change of address has been received. Notices to Iron Mountain shall be sent to the attention of its General Manager at such address. Iron Mountain shall have, and may exercise, all rights granted to warehouseman by the Uniform Commercial Code as adopted in the state where the Deposits are stored. In the event of inconsistency between these printed Terms and Conditions and the terms of a Schedule, the Schedule shall prevail.

## **Exhibit 7**

Iron Mountain Contract PC628



# IRON MOUNTAIN®
The Leader in Records & Information Management

## CUSTOMER AGREEMENT

| IRON MOUNTAIN INFORMATION MANAGEMENT, INC. (check one): | SECURE SHREDDING: |
|---|---|
| ☐ Iron Mountain Records Management Division  ☐ Iron Mountain Off-Site Data Protection Division  ☐ Iron Mountain/National Underground Storage Division | ☒ Iron Mountain Secure Shredding LLC |

**Address of Iron Mountain Branch/District Office:**

3433 Progress Dr.

Bensalem, PA 19020

**Contract Effective Date:** 6/23/03

| FOR IRON MOUNTAIN PURPOSES ONLY | |
|---|---|
| Account Number: PC 628 | SIC Code: |
| Branch/District Cost Ctr. No.: 02211 | |

| CUSTOMER: | BILLING ADDRESS (If Different): | | |
|---|---|---|---|
| Mortgage Lenders Network USA, Inc. | SAME. | | |
| **Street Address:** 240 Gibralter Rd. Ste. 150 | **Street or Box No.:** | | |
| **City:** Horsham | **State:** PA | **Zip + 4:** 19044 | **City:**  **State:**  **Zip + 4:** |
| **Primary Contact and Title:** Tim Briddes | **Billing Contact:** | | |
| **Telephone:** 215-675-6577 x 213  **Fax:** 215-675-4064  e-mail: | **Telephone:**  **Fax:**  e-mail: | | |

The Iron Mountain operating unit or affiliate checked above, as the contracting entity ("Iron Mountain"), will perform the services described on schedules annexed to this Agreement either physically or by reference (each a "Schedule"), and Customer will pay Iron Mountain for such services according to the rates and provisions in the Schedules. All services will be provided subject to the terms and conditions below and on the reverse hereof and in any Schedule.

**VALUE OF DEPOSITS.** Customer declares, for the purposes of this Agreement, that (a) with respect to hard-copy records, microfilm and microfiche stored pursuant to this Agreement, the value of such stored items is $1.00 per carton, linear foot of open-shelf files, container or other hard-copy storage unit, and (b) with respect to round reel tape, audio tape, video tape, film, data cartridges or data cassettes or other non-paper media stored pursuant to this Agreement, the value of such stored items is limited to the cost of replacing the physical media. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.

**LIMITATION OF LIABILITY.** Iron Mountain's liability, if any, for loss or destruction of or damage to materials stored with Iron Mountain ("Deposits") is limited to the value of each Deposit as described above, or as otherwise set forth on the reverse side hereof. Iron Mountain reserves the right to provide replacement of media for which liability is limited to replacement cost rather than payment of replacement cost. Iron Mountain's maximum liability with respect to services not related to storage is the amount paid by Customer for a discrete project or, if the loss is related to service of an ongoing and continuing nature, six months of fees paid by Customer for such service. Other limitations on Iron Mountain's liability are set forth on the reverse side of this Agreement.

| CUSTOMER: Mortgage Lenders Network USA, Inc. | IRON MOUNTAIN |
|---|---|
| **Individual Signing:** [print name] Timothy Briddes | **Individual Signing:** [print name] Michael J. McKee |
| **Signature:** | **Signature:** Michl J McKee |
| **Title:** Managing Director | **Title:** Director, Senior Operations |
| **Signing Date:** 6/23/03 | **Signing Date:** 6-30-03 |

# STANDARD TERMS AND CONDITIONS

### (Based on terms and conditions promulgated by Professional Records & Information Services Management, Inc.)

The following terms and conditions shall apply to this Agreement.

1. **Term.** The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on the front side of this Agreement. The initial term of this Agreement shall continue for one (1) year after commencement, unless otherwise set forth in a Schedule. Unless otherwise provided in a Schedule, upon expiration of the initial term, the term will continue with automatic renewals for additional one (1) year terms, unless written notice of non-renewal is delivered by either party to the other not less than thirty (30) days prior to the expiration date. In the event that Iron Mountain continues to hold Deposits after the expiration or termination of this Agreement, the terms of this Agreement shall continue to apply until all of Customer's Deposits have been removed from Iron Mountain's facility, except that Iron Mountain may adjust rates upon thirty (30) days' notice.

2. **Charges.** Rates and charges shall be as specified in Schedules. Unless otherwise provided in a Schedule: (i) rates for storage shall remain fixed for the first year of this Agreement, and may thereafter be changed at any time upon thirty (30) days' written notice, and (ii) rates for services may be adjusted by Iron Mountain at any time.

3. **Principal Records Services Provider.** The charges for records management and storage set forth in the Schedules are predicated upon the expectation that Customer will utilize Iron Mountain as its primary commercial provider of records service and storage (for paper and/or magnetic media, as applicable) for Customer's locations identified on the Schedules, including accretion in records, during the term of this Agreement. In the event that Customer does not so utilize Iron Mountain's services, Iron Mountain reserves the right to adjust rates and charges to the standard list rates and charges then applicable to the services provided by Iron Mountain to Customer.

4. **Authorization; Customer Instructions.** Deposits may be delivered pursuant to direction of Customer's agent(s) identified pursuant to Iron Mountain's standards. Authority granted to any persons on standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service for, or disposal or removal of, Customer's Deposits. Such orders may be given in person, by telephone or in writing (fax, electronically or hard-copy).

5. **Operational Procedures.** Customer shall comply with Iron Mountain's reasonable operational requirements, as modified from time to time, regarding containers, delivery/pick-up volumes, security, access and similar matters. Customer acknowledges that volume requests that exceed one hundred-twenty-five percent (125%) of normal volume may require Iron Mountain to incur additional costs, which Customer will pay at Iron Mountain's overtime rates, provided that Iron Mountain shall have advised Customer thereof in advance.

6. **Force Majeure.** Iron Mountain shall not be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, acts of terrorism, riots, unusual traffic delays or other causes beyond its control.

7. **Governmental Orders.** Iron Mountain is authorized to comply with any subpoena or similar order related to the Deposits, provided that Iron Mountain notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. Customer shall pay Iron Mountain's reasonable charges for such compliance. Iron Mountain will cooperate with Customer's efforts to quash or limit any subpoena, at Customer's expense.

8. **Confidentiality.** "Confidential Information" means any information concerning or relating to the property, business and affairs of Customer that is furnished to Iron Mountain, except for information that was previously known to Iron Mountain free of any obligation to keep it confidential, is subsequently made public by Customer or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be held in confidence by Iron Mountain and shall be used only in the manner contemplated by this Agreement. Iron Mountain shall use the same degree of care to safeguard Confidential Information as it utilizes to safeguard its own confidential information.

9. **Liability in Event of Loss of Stored Material.** Iron Mountain shall not be liable for any loss or destruction of, or damage to, Deposits, however caused, unless such loss or damage resulted from the failure by Iron Mountain to exercise such care as a reasonably careful person would exercise under like circumstances; Iron Mountain is not liable for loss or damage which could not have been avoided by the exercise of such care. If liable, the amount of Iron Mountain's damages is limited as provided on the front page hereof. Deposits are not insured by Iron Mountain against loss or damage, however caused. Customer may insure Deposits through third-party insurers for any amount, including amounts in excess of the limitation of liability. Customer shall cause its insurers of Deposits to waive any right of subrogation against Iron Mountain. If Deposits are placed in the custody of a common carrier for transportation, the common carrier shall be solely responsible for any loss or destruction of, or damage to, such Deposits while in the custody of the common carrier.

10. **No Product Warranty.** Iron Mountain hereby assigns to Customer any manufacturers' warranties applicable to any products sold by Iron Mountain pursuant to this Agreement. Iron Mountain provides no warranties related to products sold. WITH RESPECT TO PRODUCTS SOLD BY IRON MOUNTAIN TO CUSTOMER, IRON MOUNTAIN MAKES NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

11. **Liability with Respect to Non-Storage Services.** With respect to services not related to storage of Deposits, Iron Mountain's maximum liability for any loss or default shall be: (i) if such loss or default relates to a discrete project, the total fees paid by Customer to Iron Mountain for such project; or (ii) if such loss or default arises from services that are of an ongoing and continuing nature, the total amount of fees paid by Customer to Iron Mountain for the performance of such services during the immediately preceding six-month period.

12. **Liability with Respect to Secure Shredding (by Iron Mountain Secure Shredding LLC).** Iron Mountain shall not be responsible or liable in any manner whatsoever for the release or loss of any materials deposited in bins or otherwise delivered to it for shredding unless the release or loss is due to Iron Mountain's negligence or willful misconduct. Iron Mountain's maximum liability for any and all claims arising with respect to secure shredding service shall not exceed the aggregate amount paid by Customer with respect to Iron Mountain Secure Shredding services provided during the six (6) months preceding the event which gives rise to the claim.

13. **No Consequential Damages, etc.** In no event shall Iron Mountain be liable for any consequential, incidental, special or punitive damages, regardless of whether an action is brought in tort, contract or any other theory.

14. **Notice of Claims.** Claims by Customer must be presented in writing within a reasonable time, and in no event longer than ninety (90) days after delivery or return of the Deposits to Customer or ninety (90) days after Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.

15. **Filing of Actions.** No action may be maintained against Iron Mountain for loss, damage or destruction of Deposits, unless timely written claim has been given as provided in Section 14, and unless such action is commenced either within one (1) year after: (i) the date of delivery or return of the Deposits by Iron Mountain; or (ii) the date Customer is notified that loss, damage or destruction to part or all of the Deposits has occurred.

16. **Notice of Loss.** When Deposits have been lost, damaged or destroyed, notice thereof may be given by mailing a certified letter (return receipt requested) to Customer. In the event notice of loss, damage or destruction is given by certified letter, the time limitation for presentation of a claim and commencement of action or such begins on the date of Customer's receipt of such notice.

17. **Payment Terms.** Payment terms are net, thirty (30) days. If Customer fails to pay Iron Mountain's charges (other than disputed charges) within forty-five (45) days after the date of an invoice, Iron Mountain may, at its option: (a) refuse access to Deposits, (b) suspend service, (c) redeliver Deposits to Customer or (d) terminate this Agreement. Customer shall be liable for late charges at the rate of fifteen percent (15%) per annum, compounded monthly, on unpaid balances and all expenses incurred in collection, including reasonable attorneys' fees. If Customer is consistently delinquent (defined as being late in the payment of any three (3) or more undisputed invoices in a 12-month period) and/or upon the expiration or termination of this Agreement, Iron Mountain may require payment by certified check prior to performance of services, including delivery of Deposits. Upon default by Customer, Iron Mountain shall have other rights and remedies as may be provided by law. In the event Iron Mountain takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer.

18. **Ownership Warranty.** Customer warrants that it is the owner or legal custodian of the Deposits and has full authority to store the Deposits and direct their disposition in accordance with the terms of this Agreement. Customer shall reimburse Iron Mountain for any expenses reasonably incurred by Iron Mountain (including reasonable legal fees) by reason of Iron Mountain's compliance with the instructions of Customer in the event of a dispute concerning the ownership, custody or disposition of Deposits stored by Customer with Iron Mountain.

19. **Restrictions on Stored Material; Customer Premises.** Customer shall not store with Iron Mountain any material that is highly flammable, explosive, toxic or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. Customer shall not store negotiable instruments, jewelry, check stock or other items that have intrinsic value. All Customer's premises, where Iron Mountain's employees perform services or make deliveries hereunder shall be free of hazardous substances and any other hazardous or dangerous conditions.

20. **Software License.** If access to or use of Iron Mountain inventory management software and computer programs (the "Software") is provided hereunder (as set forth in a Schedule), Iron Mountain hereby grants Customer a limited, nonexclusive license to use the Software solely in conjunction with records storage services provided by Iron Mountain during the term of this Agreement. Customer acknowledges that all Software and the inventory management system comprised of the Software belong to Iron Mountain. During the term of this Agreement, Iron Mountain shall have the exclusive right to use Deposit inventory information to provide records management services to Customer; upon expiration of this Agreement, Iron Mountain shall have the right to maintain inventory information for record-keeping purposes.

21. **Modifications to Add Customer Locations, Services.** In the event that Customer locations or lines of service are added to or deleted from this Agreement, the term of this Agreement shall not change unless the parties so agree. Pricing adjustments for all Customer's locations and/or services under this Agreement may be made on dates pricing adjustments are permitted under Section 2, regardless of the dates when new locations or services are added. Any modification of Customer locations serviced or lines of services provided will be effected by an amendment of this Agreement or a Schedule.

22. **Performance of Services by Other Operating Units.** Certain lines of service may be performed by another operating unit of Iron Mountain Information Management, Inc. or by an affiliated company other than the operating unit or affiliate identified at the head of this Agreement. In such event, such other operating unit or affiliate will perform such service as a subcontractor to Iron Mountain. The subcontracting entity may invoice Customer directly, but Iron Mountain will remain liable for all services performed for Customer.

23. **Miscellaneous.** This Agreement binds the successors and assigns of the respective parties and cannot be changed orally. This Agreement may not be assigned by the Customer (other than to an affiliate which shall assume the obligations of its assignor by written instrument) without the written consent of Iron Mountain, which shall not be unreasonably withheld or delayed. Any notice made pursuant to this Agreement may be given in writing at the addresses set out on the front side hereof until written notice of a change of address has been received. Notices to Iron Mountain shall be sent to the attention of its General Manager at such address. Iron Mountain shall have, and may exercise, all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the Deposits are stored. In the event of inconsistency between these printed Terms and Conditions and the terms of a Schedule, the Schedule shall prevail.

**<u>Exhibit 8</u>**

Iron Mountain Contract Termination Information

| CustID | Total Cost Retrieval & | Remaining Contract Cost | Total | Cubic Feet | Retrieval Rate | Destruction Rate | Permanent Withdrawal | Expiration of Contract | Outstanding |
|--------|------------------------|--------------------------|-------|------------|----------------|------------------|----------------------|------------------------|-------------|
| C5093 | $47,379.04 | $8,051.59 | $55,430.63 | 9650.4 | 2.19 | 2.652 | 3.312 | 3/31/2011 | 2,721.55 |
| PA453 | $5,514.77 | $1,331.50 | $6,846.27 | 775.2 | 3.218 | 3.896 | | 4/30/2011 | 332.87 |
| PC628 | $1,608.46 | $786.00 | $2,394.46 | 231.6 | 3.141 | 3.804 | | 6/30/2011 | 131 |
| G1629 | $8,372.79 | $1,476.01 | $9,848.80 | 1729.2 | 2.19 | 2.652 | | 3/31/2011 | 492 |
| XK450 | $9,842.04 | $1,723.78 | $11,565.82 | 1469.18 | 3.03 | 3.669 | | 3/31/2011 | 574.59 |
| | | | $0.00 | | | | | | |
| | | | $0.00 | | | | | | |
| | | | $0.00 | | | | | | |
| | | | $0.00 | | | | | | |
| | | | $0.00 | | | | | | |
| | | | $0.00 | | | | | | |
| | | | $0.00 | | | | | | |
| | | | $0.00 | | | | | | |
| | | | $0.00 | | | | | | |
| TOTAL | $72,717.10 | $13,368.88 | $86,085.98 | | | | | | |