IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MORTGAGE LENDERS NETWORK USA, INC., | ) ) ) | Case No. 07-10146 (PJW) |
| | ) | **Re: Docket No. 446** |
| Debtor. | ) ) | |
| | ) | Hearing Date: October 6, 2011 @ 11:30 AM |
| | ) | Objection Deadline: September 29, 2011 @ 4:00 PM |

MOTION OF SOVEREIGN BANK TO COMPEL THE DEBTOR
AND/OR THE LIQUIDATING TRUSTEE, ON BEHALF OF THE
DEBTOR, TO COMPLY WITH COURT APPROVED STIPULATION
AND ASSIST IN RECTIFYING TITLE AND OWNERSHIP
ISSUES OF LOANS REMAINING IN DEBTOR'S NAME

Sovereign Bank ("Sovereign"), by and through its undersigned attorneys, hereby moves (the "Motion") the Court for entry of an Order compelling the debtor and/or Liquidating Trustee (jointly, the "Trustee") of the above-captioned now reorganized debtor and debtor in possession (the "Debtor") to comply with the Stipulation Terminating Servicing Agreement with Sovereign Bank, dated on or about April 10, 2007 [Docket No. 446](the "Stipulation") by executing a limited power of attorney, a proposed form of which is attached hereto as Exhibit A. The limited power of attorney will allow Sovereign to execute any and all documents necessary to rectify title and ownership issues on mortgages and notes remaining in the Debtor's name and owned by four different securitization trusts (the "Securitization Trust(s)"). In support of this Motion, Sovereign respectfully represents as follows:

## JURISDICTION

1.   This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of

these proceedings and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicate for the relief sought herein is section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3.  The Debtor and The First National Bank of Boston ("FNBB") entered into that certain Servicing Agreement dated as of June 1, 1997 ("Agreement") for Mortgage loans from time to time designated by FNBB on hard copy and computer medium Mortgage Schedules delivered by FNBB to Debtor during the term of the Servicing Agreement ("Serviced Loans").

4.  The Debtor and FNBB entered into that certain Addendum I to the Servicing Agreement which was executed on or about August 26, 1998 ("Addendum") as an amendment to the Servicing Agreement pertaining to the servicing fee with respect to certain of the Serviced Loans commonly referred to as "the LSI portfolio" as described on Exhibit A1 thereto ("LSI Loans") that are part of the Serviced Loans.

5.  The Debtor and BankBoston, N.A. a national banking association formerly knows as FNBB, entered into that certain Servicing Agreement Amendment No. 1 dated as of August 1, 1998 ("First Amendment") as an amendment to the Servicing Agreement pertaining to the servicing of certain securitized loans that are part of the Serviced Loans.

6.  Sovereign purchased from BankBoston, N.A., all its right, title and interest in its servicing rights under the Pooling and Servicing Agreements, dated as of July 1, 1998, December 1, 1998 and June 1, 1999 (the "Pooling and Servicing Agreements"), the subservicing under each of which was performed by the Debtor pursuant to the

2

Agreement, as amended by the Addendum and the First Amendment, and thereafter by a Second Amendment to Servicing Agreement dated August 31, 2001 ("Second Amendment"), pursuant to which Sovereign and the Debtor agreed for the Debtor to service additional loans and to amend the Agreement.

7. On June 1, 2005, as amended by Amendment to Servicing Agreement dated July 10, 2006, the Debtor and Sovereign entered into a second Servicing Agreement (the "Second Agreement"), pursuant to which the Debtor agreed to service certain additional Mortgage Loans as designated by Sovereign (the Agreement, the Addendum, the First Amendment, the Second Amendment, and the Second Agreement shall collectively be referred to herein as the "Servicing Agreement").

8. On January 29, 2007, Sovereign sent the Debtor its written notice of termination of all of the Debtor's rights and obligations under the Servicing Agreement.

9. Thereafter, on February 5, 2007, the Debtor filed its voluntary petition for relief under chapter 11 of Title 11 of the United States Code, as amended ("Bankruptcy Code"), and has remained as a debtor-in possession since that date pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10. By March 19, 2007, all of the Mortgage Loans were believed to have been transferred by the Debtor to the new servicers designated by Sovereign. Sovereign assumed the servicing role for the loans subject to the Securitization Trusts.

11. On or about April 10, 2007, the Debtor and Sovereign entered into the Stipulation providing for the termination of the Servicing Agreement.

12. On or about April 10, 2007, the Court entered an Order Approving Stipulation Terminating Servicing Agreement with Sovereign Bank (the "Termination

Order"). The Termination Order and the Stipulation (affixed thereto) is attached hereto as <u>Exhibit</u> <u>B</u>.

    13.    Paragraph 2(c) of the Court approved Stipulation provides that the

> Debtor shall use its best efforts to complete the remaining trailing work for the transferred loans, which shall include...(c) To the extent that it has not already done so in accordance with the Servicing Agreement, the Debtor shall deliver to Sovereign or its designee... the Loan Files which are then in the Debtor's possession ..In addition, the Debtor shall use its best efforts under the facts and circumstances of this case to make all records or documents relating to the Mortgage Loans available to Sovereign. . . "

Upon information and belief, the Loan Files should have contained original assignments of the Mortgage Loans assigning them to the appropriate Securitization Trust as well as allonges transferring of ownership of the notes.

    14.    As referenced in greater detail in the accompanying declaration of Joseph M. Blaston, August 26, 2011 (the "Declaration"), in or around January 2011. Sovereign became aware that, of the 1,400 loans in the Trust portfolio currently being serviced by Sovereign (which loans were those transferred to Sovereign upon the termination of the Servicing Agreement), a significant number of mortgages and notes (likely in the hundreds) still remain in MLN's name. In some cases, recorded assignments from MLN contain mistakes that likely invalidate the assignments under applicable state law. In other cases, there are no assignments from MLN to any successor in the chain of title leaving the loans in MLN's name. If Sovereign is unable to prepare and file corrective assignments, or in some cases original assignments and allonges, the titles to the loans are unmarketable such that they cannot be discharged at payoff, foreclosed upon following default and Sovereign cannot perfect claims on loans where the borrower files for bankruptcy. Without the limited power of attorney that Sovereign seeks in its

4

accompanying Motion, Sovereign has no authority or ability to execute the necessary documentation to rectify the current ownership and title issues.

15. In or about April, 2011, and on several occasions thereafter, in-house and outside counsel for Sovereign requested that the Debtor and/or Trustee facilitate the transfer of these mortgages and notes from the Debtor's name to the Securitization Trusts. A listing of several of the loans that Sovereign is aware of that remain in MLN's name was provided to counsel to the Trustee, along with a list of the 1,400 loans in the Trust portfolio. On or about June 7, 2011, counsel for the Trustee advised that neither the Debtor nor the Trustee will take any action to assist with the correction of the title and ownership issues of the loans at issue.

16. Without the limited power of attorney requested herein, Sovereign will have no reasonably cost effective way, or any other way for that matter, to obtain or execute necessary documentation to rectify the current ownership and title issues without judicial intervention on a case by case basis. Indeed, judicial intervention will be extremely costly and cause undo delay and court backlog on an issue that could and should be rectified by the Trustee. See Declaration.

### RELIEF REQUESTED

17. Pursuant to the Motion, Sovereign seeks entry of an Order compelling the Debtor to comply with the terms of the Termination Order and Stipulation and enter into a limited power of attorney, on the proposed form attached hereto. Without this relief, Sovereign and the Securitization Trusts will suffer severe economic consequences while there remains no harm to the Debtor if the Court were to grant the relief sought herein.

## BASIS FOR RELIEF

18. A court has the authority to enforce a stipulated agreement in connection with a case directly before it. Fox v. Consolidated Rail Corp., 739 F.2d 929, 932 (3d Cir.1984). Generally, courts favor stipulated agreements because the parties avoid the expense and delay of litigation. See Pennwalt Corp. v. Plough, Inc., 676 F.2d 77,80 (3d Cir. 1982); Read v. Baker, 438 F.Supp. 732, 735 (D. Del. 1977) (citations omitted). Stipulated agreements entered into voluntarily between parties are binding agreements. Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970). Moreover, stipulated agreements are contracts, and general contract law principles apply. Emerson Radio Corp. v. Stelling, 52 Fed.Appx. 173, 178 (3d Cir. 2002) (citations omitted).[1]

19. "It is axiomatic that a court possesses the inherent authority to enforce its own orders." In re Continental Airlines, Inc., 236 B.R. 318, 325-26 (Bankr. D. Del. 1999), aff'd, 279 F.3d 226 (3d Cir. 2002)(citations omitted). Moreover, Bankruptcy Code Section 105(a) provides that a bankruptcy court is authorized to issue any order, process or judgment necessary to carry out the provisions of the Bankruptcy Code, and "gives the bankruptcy court the power and the jurisdiction to enforce its valid orders." In re Marcus Hook Development Park, Inc., 943 F.2d 261, 266 (3d Cir. 1991) (quoting In re Radco Merchandising Services, Inc., 111 B.R. 684, 688-89 (N.D. Ill. 1990); 11 U.S.C. § 105(a). In the exercise of this authority, courts have inherent powers to enforce compliance with and execution of their lawful orders. See e.g. Continental Airlines, 236 B.R. at 331 (finding creditors in contempt of plan and confirmation order and awarding debtor attorneys' fees and costs); In re Kennedy, 80 B.R. 673 (Bankr. D. Del. 1987)

---

[1] In determining whether a contract exists, Delaware law provides that a contract arises when all of the essential terms are agreed upon by the parties. See Leonard v. University of Delaware, 204 F.Supp.2d 784, 787 (D. Del. 2002) (stating that "[u]nder Delaware law a contract 'comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms.'") (citations omitted).

(finding party in contempt of court order and awarding attorneys' fees incurred in brining motion for contempt).

20. Here the Court should exercise its authority to enforce the terms of the Termination Order. Sovereign and the Debtor voluntarily negotiated, entered into, and executed the Termination Stipulation. The Stipulation evidences a clear intent of the parties to bind themselves to the terms of the Stipulation. However, even though the Debtor is required under the terms of the Stipulation to use its best efforts to deliver to Sovereign or its designee. . . the Loan Files which are then in the Debtor's possession, the Debtor has failed to do so.

21. Without the Debtor or Liquidating Trustee's execution of a limited power of attorney, solely for the purpose of completing and correcting the necessary documentation to ensure accurate ownership and title of the loans previously serviced by MLN Sovereign and the Securitization Trusts will suffer severe economic consequences while there remains no harm to the Debtor if the Court were to grant the relief sought herein.

### NOTICE

22. Notice of this Motion has been given to (a) the Office of the United States Trustee; (b) counsel to the Debtor and Liquidating Trustee; (c) counsel to the Committee; and (d) all parties requesting notices in this case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, Sovereign submits that no further notice need be given.

23. No prior application for the relief requested herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, Sovereign respectfully requests entry of the Order substantially in the form attached hereto and such other and further relief as this Court may deem just and proper.

Dated: September 16, 2011

WEIR & PARTNERS LLP

/s/ Kenneth E. Aaron
Kenneth E. Aaron, Esq. (#4043)
824 Market Street, Suite 800
Wilmington, DE 19801
Telephone: 302.652-8181
Facsimile: 302.652-8909

-and-

SCHIFF HARDIN, LLP
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
666 Third Avenue, 17th Floor
New York, NY 10103
Telephone: 212.753.5000
Facsimile: 212.753.5044

*Counsel for Sovereign Bank*