UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| MORTGAGE LENDERS NETWORK, USA, INC | ) | Case No. 07-10146 |
| | ) | |
| Debtor | ) | Chapter 11 |
| _____ | ) | |
| | ) | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB | ) | |
| dba CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL | ) | |
| CAPACITY BUT SOLELY AS TRUSTEE OF THE | ) | |
| BROUGHAM FUND I TRUST | ) | |
| | ) | |
| Movant | ) | |
| | ) | ANSWER TO |
| v. | ) | MOTION TO REOPEN |
| | ) | |
| MORTGAGE LENDERS NETWORK, USA, INC | ) | |
| | ) | |
| Respondent | ) | |

**MEMORANDUM OF LAW**

Third party Defendants Leonard and Pauline Cortellino provide this Memorandum of Law in support of their objection to the Movant's Motion.

The Cortellinos are very small pawns in a much larger field of battle that Wilmington Savings Fund (WSF) is waging to attempt to correct contractual and legal mistakes made almost two decades ago by Mortgage Lenders Network (MLN).

WSF has made two attempts to correct these errors in state court - both times filing declaratory judgment actions, and both times suffering dismissal on the merits. Thereafter, WSF filed a breach of contract action against the Cortellinos, and entered into a settlement agreement before judgment, allowing the Cortellinos to retain their residence.

The instant action is an attempt to conduct an "end run" around the Maine court system to rectify fatal contractual errors made by WSF almost 20 years ago.

The Cortellinos have been subject to 3 Maine State lawsuits, all of which have ended without relief for the Movants. Below is a brief timeline of events.

| | |
|---|---|
| 2006 | Original documents signed with Mortgage Lenders Network (MLN). |
| 2/5/07 | MLN Bankruptcy filed 07-10146, Delaware. |
| 4/23/16 | 1st case - Declaratory Judgment Complaint. AUSC-16-35 (Attachment 1) |
| 11/16/17 | 1st case Court denies requested relief on Greenleaf and other grounds. (Attachment 2) |

| | | |
|---|---|---|
| 12/7/17 | 1st case - Notice of appeal filed, AND-17-533 | |
| 3/7/18 | 1st case - Bank dismisses appeal. (Attachment 3) | |
| 6/12/18 | 2nd case - Declaratory Judgment Complaint filed.  LEWDC-18-291 (Attachment 4) | |
| 10/17/19 | 2nd case dismissed with prejudice.   (Attachment 5) | |
| 4/6/20 | 3rd case - Breach of Contract complaint filed (lawsuit on the note).  ANDSC-20-59. | |
| 6/8/21 | Settlement reached. 3rd case later dismissed. | |

After signing what Movants term a "mortgage" with the Cortellinos in 2006, the following events occurred:

1. The MLN Ch. 11 Plan of Liquidation dated Dec. 19. 2008 appointed a liquidating trustee.  He became owner of all Maine MERS mortgages naming MLN as lender.

2. The MLN Ch. 11 Plan was confirmed on Feb. 2, 2009.

3. The Liquidating Trustee continued in that position until the final decree of the Delaware Bankruptcy Court on July 19, 2011.

4. The Maine Law Court decided MERS V. Saunders on August 12, 2010 and held that MERS received nothing more than the right to record the mortgage instrument in mortgages substantially the same as the case at bar.

5. After Saunders, all lending entities were "fully on notice that [an assignee of a MERS mortgage] would receive almost nothing through that assignment…". Knope v. Green Tree Servicing, LLC, 2017 ME 95, ¶ 42 (Hjelm dissent).

6. Wilmington and its predecessors are guilty of laches for not acting while the MLN case was open to request that the liquidating trustee assign this mortgage. Following the Maine Law Court decision in Saunders, mortgage companies with MERS issues were under an obligation to exercise their alleged rights in a reasonable amount of time.

7. Wilmington and its predecessors are guilty of unclean hands for sitting on their rights while suing the Cortellinos and putting them to the expense of defending three lawsuits. By their own admission at paragraph 17 of their motion, Movants acknowledge they "cannot initiate a foreclosure or exercise any of their rights under the Mortgage..." at this time.

8. Wilmington, however, has known this indisputably since 2010 when the Saunders decision was issued.

9. Despite knowing for almost 12 years that they lacked the right to foreclose, Wilmington chose to file 3 state lawsuits which covered a 5 year period, all the while failing to return to the MLN

bankruptcy.

10. The motion to reopen will not benefit any creditors of the bankruptcy estate of MLN.

11. Even if the case was reopened, the expenses of reopening and a reappointment of a trustee would likely exceed any potential payment to be made by Wilmington to the estate to obtain the assignment and even if there were net proceeds available, the benefit to individual creditors would be nil, and the cost of distribution of pennies to all of the MLN creditors would be prohibitive.

## CASELAW ON REOPENING CLOSE BANKRUPTCY CASES

12. The cases addressing the Bankruptcy Court's discretion to re-open a case are substantial. The 1st Circuit has numerous cases to consider.

13. Binette v. Bangor Savings Bank, BAP NO. EP 18-015, 2019 WL 1402731 provides a detailed review of when a bankruptcy case should be re-opened. The Court stated:

> I. The Standard Governing Motions to Reopen
> Section 350(b) governs the reopening of bankruptcy cases. See 11 U.S.C. § 350(b). That section provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Id. Bankruptcy Rule 5010 provides, in relevant part: "A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed. R. Bankr. P. 5010. "The decision to reopen should be made on a case-by-case basis based on the particular circumstances and equities of a case, and should be left to the sole discretion of [the] bankruptcy court." In re Dalezios, 507 B.R. 54, 58 (Bankr. D. Mass. 2014) (citation omitted) (internal quotations omitted); see also Pingaro v. Ameriquest Mortg. Co. (In re Pingaro), BAP No. MB 08-025, 2008 WL 8664764, at *2 (B.A.P. 1st Cir. Aug. 14, 2008) (stating "the decision to reopen a case is within the sound discretion of the bankruptcy court") (quoting Mass. Dep't of Revenue v. Crocker (In re Crocker), 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007) ).
>
> Motions to reopen "involve a weighing of competing policy considerations: the bankruptcy policy of providing a deserving debtor with a fresh start; and the bankruptcy policy of providing, in an expedient manner, finality to those disputes which arise between debtors and creditors." In re Gagne, No. 02-10966, 2010 WL 5209243, at *1 (Bankr. D. Me. Dec. 16, 2010) (citation omitted) (internal quotations omitted). The moving party bears the burden of demonstrating grounds for reopening the case. Colonial Sur. Co. v. Weizman, 564 F.3d 526, 532 (1st Cir. 2009). Courts consider a variety of factors when deciding whether to reopen a case, including:
>
> The length of time that the case was closed; whether a non-bankruptcy forum,

such as state court, has the ability to determine the issue sought to be posed by the debtor; whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties; whether any parties would be prejudiced were the case reopened or not reopened; the extent of the benefit which the debtor seeks to achieve by reopening; and whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

In re Crocker, 362 B.R. at 53 (citing In re Otto, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004) ; see also In re Dalezios, 507 B.R. at 59 (considering the Crocker factors).

"Courts should not reopen a case if doing so would be futile." Diaz Rodriguez v. Olympic Mortg. Corp. (In re Diaz Rodriguez), 357 B.R. 691, 699 (Bankr. D.P.R. 2006) (citation omitted); see also In re Ludvigsen, 2015 WL 3733193, at *4 (stating the bankruptcy court should deny a motion to reopen if reopening the case "would serve no purpose"); In re Gagne, 2010 WL 5209243, at *1 (same). Courts within this circuit equate "futility" in this context with an inability to ultimately prevail in the contemplated action or on the proffered claim. See In re Ludvigsen, 2015 WL 3733193, at *4; In re Lugo Velez, No. 13-06518, 2016 WL 5947227, at *1 (Bankr. D.P.R. Oct. 13, 2016); In re Gagne, 2010 WL 5209243, at *1; In re Weber, 283 B.R. 630, 633 (Bankr. D. Mass. 2002). "A case should not be reopened if the ultimate relief the movant seeks is inappropriate[.]" In re Siegal, 535 B.R. 5, 10 (Bankr. D. Mass. 2015) (citations omitted).

14. This Court should adopt the same standard.  In this case, the Bankruptcy Estate will receive no benefit from the Petitioner's action.  No funds will be distributed to unsecured creditors.  This action has no benefit for anyone other than MLN.

15. Notably, Movants have failed to address *any* of the standards imposed in seeking to re-open a bankruptcy case.  Movant here carries the burden to demonstrate the grounds for reopening the case.

16. More importantly, MLN is seeking an order that would affect *all* Mortgagors who, at any time, signed a defective MERS mortgage with MLN.

      The Cortellinos have been in constant litigation with Wilmington over the course of six years, all as a result of Wilmington's choices respecting how to manage MLN's defective MERS mortgage. They should not be subjected to further litigation.

| | |
|---|---|
| Dated : 2/28/22 | /s/ Tiffany Poole, Esq. |
| | Tiffany A. Poole, Esq., Bar No.3860 |
| | Poole, Mensinger, Cutrona & Ellsworth-Aults |
| | 2710 Centerville Road, Suite 101 |
| | Wilmington, DE 19808 |
| | (302)428-0100 |
| | *Attorney for Leonard & Pauline Cortellino* |